## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| GEORGE BUCCIGROSSSI, WILLIAM LANGSTON, CLAY WAGNER, LINDA WETZEL and MICHAEL CAIOLA, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>LUMBER LIQUIDATORS, INC., a Delaware Corporation, LUMBER LIQUIDATORS LEASING, LLC, a Delaware Limited Liability Corporation, LUMBER LIQUIDATORS HOLDINGS, INC., a Delaware Corporation, LUMBER LIQUIDATORS SERVICES, LLC, a Delaware Limited Liability Corporation,<br><br>    Defendants. | Case No.: 5:15-cv-00094-D<br><br>CLASS ACTION<br>JURY TRIAL DEMANDED |

## <u>AMENDED CLASS ACTION COMPLAINT</u>

Plaintiffs, George Buccigrosssi, William Langston, Clay Wagner, Linda Wetzel and Michael Caiola ("Plaintiffs"), individually and on behalf of all others similarly situated (the "Class", as more fully defined below), allege against Defendant Lumber Liquidators Inc., Defendant Lumber Liquidators Leasing, LLC, Defendant Lumber Liquidators Holding, Inc., and Defendant Lumber Liquidators Services, LLC (collectively "Lumber Liquidators", the "Company", or "Defendants") the following facts and claims upon knowledge as to the matters relating to themselves and upon information and belief as to all other matters and, by way of the Amended Class Action Complaint, aver as follows:

## INTRODUCTION

1.       Lumber Liquidators supervises and controls the manufacturing, and packages, distributes, markets and sells a variety of Chinese-manufactured laminate wood flooring materials (the "Products" or "Chinese Flooring") that it prominently advertises and warrants as fully compliant with California's strict formaldehyde emission standards promulgated by the California Air Resources Board ("CARB") and enumerated in California's Airborne Toxic Control Measure to Reduce Formaldehyde Emissions from Composite Wood Products ("CARB Regulations"). Cal. Code Regs. tit. 17, §§ 93120-93120.12. Those standards have been adopted as the national standard by the Formaldehyde Standards for Composite-Wood Products Act, 15 U.S.C. § 2697.

2.       Defendants also represent and advertise that their Chinese-manufactured laminate wood flooring materials sold throughout the United States comply with the CARB Regulations.

3.       Defendants' claims that the Products comply with CARB's standards for formaldehyde emissions and "with all applicable laws, codes and regulations" are false. As detailed herein, the Products emit formaldehyde gas at levels that exceed the strict limits set forth in the CARB Regulations. Defendants also fail to disclose the unlawful level of formaldehyde emission to consumers.

4.       In an attempt to allay safety concerns regarding its Chinese-made flooring products, Defendants uniformly claim that all of its hardwood and laminate flooring products are compliant with the California Air Resources Board's ("CARB") standards for safe formaldehyde emissions. On its website, Defendants states: "commitment to quality and safety extends to everywhere we do business. We require that all of our suppliers comply with California's advanced environmental requirements, even for products sold outside California." As described herein, the packaging for all Lumber Liquidators' Chinese-made flooring products claim that the products are compliant with California CARB formaldehyde standards.

5.       Despite assurances that its flooring products are safe and comply with California

formaldehyde regulations, several reports have shown that Lumber Liquidators' Chinese-made flooring products actually contain levels of formaldehyde that exceed the CARB standards. On March 1, 2015, *60 Minutes* news aired a story dispelling Lumber Liquidators' claims that its flooring products are compliant with California formaldehyde standards. The news story was prompted by an investigation that was conducted by two environmental advocacy groups. The environmental groups purchased more than 150 boxes of Lumber Liquidators' laminate flooring at stores around California and sent the boxes to three certified labs for a series of tests. The results showed that every single sample of Chinese-made laminate flooring from Lumber Liquidators failed to meet California formaldehyde emissions standards.

6.      The results of that investigation prompted *60 Minutes* news to conduct its own independent investigation into Lumber Liquidators' Chinese-made Flooring. The *60 Minutes* news team went to stores in Virginia, Florida, Texas, and New York and purchased 31 boxes of Lumber Liquidators' Chinese-made flooring.  *60 Minutes* sent the sample for testing at two certified labs. Of the 31 samples of Chinese-made laminate flooring, only one was compliant with formaldehyde emissions standards. Some were more than 13x over the California limit. Both of the labs told *60 Minutes* that they had never seen formaldehyde levels that high.

7.      *60 Minutes* then sent undercover investigators with hidden cameras to the city of Changzhou, China. The investigators posed as buyers and visited three different mills that manufacture laminates and flooring on behalf of Defendants. The results of the undercover investigation were alarming. The employees at the mills openly admitted that they used core boards with higher levels of formaldehyde to make Lumber Liquidators laminates, saving the company 10-15 percent on the price, and they also admitted falsely labeling the company's laminate flooring as CARB compliant.

8.      Lumber Liquidators' illegal behavior with respect to its manufacturing, marketing, and sale of Chinese Flooring has caused Plaintiffs and the other Class members to suffer direct financial harm. Plaintiffs' purchases are markedly less valuable because of its elevated level of formaldehyde. Plaintiffs would have paid significantly less, if they purchased

Chinese Flooring at all, had they known that the product contained elevated levels of the toxin formaldehyde.

9.      Plaintiffs assert claims individually and on behalf of the other members of the proposed Class.

## PARTIES

10.      Plaintiff George Buccigrossi is a natural person and citizen of North Carolina. Plaintiff owns a home in Raleigh, Wake County, North Carolina in which Lumber Liquidators' Chinese Flooring is installed. In January 2015, Plaintiff purchased 12 mm Dream Home Sandy Hills Hickory Laminate Flooring from Lumber Liquidators and installed it in his home. Plaintiff relied on the representations of Lumber Liquidators, Lumber Liquidators' representatives, and the express warranties on the Chinese Flooring regarding CARB compliance in selecting Lumber Liquidators' Chinese Flooring over all other brands of flooring. However, contrary to Lumber Liquidators' representations and the warranties, the Chinese Flooring is not CARB compliant.

11.      Plaintiff Michael Caiola is a natural person and citizen of North Carolina. Plaintiff owns a home in Raleigh, Wake County, North Carolina in which Lumber Liquidators' Chinese Flooring is installed. In October 2013, Plaintiff purchased Chinese Flooring from Lumber Liquidators and installed it in his home. Plaintiff relied on the representations of Lumber Liquidators, Lumber Liquidators' representatives, and the express warranties on the Chinese Flooring regarding CARB compliance in selecting Lumber Liquidators' Chinese Flooring over all other brands of flooring. However, contrary to Lumber Liquidators' representations and the warranties, the Chinese Flooring is not CARB compliant.

12.      Plaintiff William Langston is a natural person and citizen of North Carolina. Plaintiff owns a home in Goldsboro, Wayne County, North Carolina in which Lumber Liquidators' Chinese Flooring is installed. In November, 2012, Plaintiff purchased 12 mm

4

Dream Home Glacier Peak Poplar Laminate Flooring from Lumber Liquidators and installed it in his home. Plaintiff relied on the representations of Lumber Liquidators, Lumber Liquidators' representatives, and the express warranties on the Chinese Flooring regarding CARB compliance in selecting Lumber Liquidators' Chinese Flooring over all other brands of flooring. However, contrary to Lumber Liquidators' representations and the warranties, the Chinese Flooring is not CARB compliant.

13.     Plaintiff Clay Wagner is a natural person and citizen of North Carolina. Plaintiff owns a home in Williamston, Martin County, North Carolina in which Lumber Liquidators' Chinese Flooring is installed. In April 2014, Plaintiff purchased 12 mm KM HS Imperial Teak Laminate Flooring from Lumber Liquidators and installed it in his home. Plaintiff relied on the representations of Lumber Liquidators, Lumber Liquidators' representatives, and the express warranties on the Chinese Flooring regarding CARB compliance in selecting Lumber Liquidators' Chinese Flooring over all other brands of flooring. However, contrary to Lumber Liquidators' representations and the warranties, the Chinese Flooring is not CARB compliant.

14.     Plaintiff Linda Wetzel is a natural person and citizen of North Carolina. Plaintiff owns a home in Southport, Brunswick County, North Carolina in which Lumber Liquidators' Chinese Flooring is installed. In August 2013, Plaintiff purchased 12 mm Dream Home Mission Olive Laminate Flooring and installed it in her home. Plaintiff relied on the representations of Lumber Liquidators, Lumber Liquidators' representatives, and the express warranties on the Chinese Flooring regarding CARB compliance in selecting Lumber Liquidators' Chinese Flooring over all other brands of flooring. However, contrary to Lumber Liquidators' representations and the warranties, the Chinese Flooring is not CARB compliant.

15.     Defendant, Lumber Liquidators, Inc., is a Delaware corporation with its principal place of business at 3000 John Deere Road, Toano, Virginia 23168. Lumber Liquidators, Inc. is licensed and doing business in the State of North Carolina.

16.     Defendant, Lumber Liquidators Leasing, LLC, is a Delaware Limited Liability Corporation with its principal place of business at 3000 John Deere Road, Toano, Virginia 23168.

17.     Defendant, Lumber Liquidators Holding, Inc., is a Delaware corporation with its principal place of business at 3000 John Deere Road, Toano, Virginia 23618.

18.     Defendant, Lumber Liquidators Services, LLC, is a Delaware Limited Liaiblity Corporation with its principal place of business at 3000 John Deere Road, Toano, Virginia 23168.

## JURISDICTION AND VENUE

19.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2) (diversity jurisdiction) and the Class Action Fairness Act, in that (i) there is complete diversity (Plaintiffs are citizens of North Carolina and Defendants are domiciled and incorporated in another state), (ii) the amount in controversy exceeds $5,000,000.00 (Five Million Dollars) exclusive of interests and costs, and (iii) there are 100 or more members of the proposed Plaintiffs' Class.

20.     This Court has personal jurisdiction over Defendants because they conduct business in North Carolina and otherwise intentionally avail themselves of the markets in North Carolina to render the exercise of jurisdiction by this Court proper. Defendants have marketed, promoted, distributed, and sold the Products in North Carolina and throughout the United States

21.    Venue is proper in this District under 28 U.S.C. § 1391 because Plaintiffs reside in this Judicial District and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this Judicial District. In addition, Lumber Liquidators does business and/or transacts business in this Judicial District, and therefore, resides here for venue purposes.

## FACTUAL ALLEGATIONS

### A. Lumber Liquidators

22.    Lumber Liquidators is one of the largest specialty retailers of hardwood flooring in the United States, with over 300 retail stores in 46 states. Lumber Liquidators sells primarily to homeowners directly or to contractors acting on behalf of homeowners. Consumers may also purchase the Company's products online, and any purchases made over the Internet are shipped to the Lumber Liquidators retail location of the customers choosing.

23.    Lumber Liquidators prides itself on having one of the largest inventories of prefinished and unfinished hardwood floors in the industry. Lumber Liquidators carries solid and engineered hardwood, laminate flooring, bamboo flooring, cork flooring and resilient vinyl flooring, butcher blocks, molding, accessories, and tools.

24.    Lumber Liquidators represents that it negotiates directly with the lumber mills, eliminating the middleman and passing the savings on to its customers.  As detailed herein, one of the primary reasons Lumber Liquidators has grown so quickly and its profits have surged has been through the Company's misrepresentations about the formaldehyde levels of its products.

### B. Formaldehyde

25.    Formaldehyde is a colorless, and strong smelling gas. According to the Occupational Safety and Health Administration ("OSHA"), formaldehyde is "commonly used a preservative in medical laboratories and mortuaries, formaldehyde is also found in many

products such as chemicals particle board, household products, glues, permanent press fabrics, paper product coatings, fiberboard, and plywood." At high exposure levels, formaldehyde is a sensitizing agent that can cause and immune system response upon initial exposure. It is also a cancer hazard. Formaldehyde exposure can be irritating to the eyes, nose, and throat and severe allergic reactions may occur in the skin, eyes, and respiratory tract.

26.     When wood flooring is manufactured, layers of wood particles are pressed together and sealed with adhesives containing urea formaldehyde resin ("UFR"). UFR is highly water-soluble and therefore is the most problematic mixture for indoor air pollution.

27.     Pressed-wood products, like hardwood plywood and particleboard, are considered a major source of indoor formaldehyde emissions.

28.     All of the Lumber Liquidators Chinese-made Flooring Products contain a UFR formaldehyde or other formaldehyde resin.

**C. CARB Regulations Regarding Formaldehyde**

29.     The California Air Resource Board, or "CARB," is a department of the California Environmental Protection Agency. CARB oversees all air pollution control efforts in California to maintain air quality standards.

30.     In January of 2009, CARB promulgated regulations called the Airborne Toxic Control Measure to Reduce Formaldehyde Emissions from Composite Wood Products. See 17 California Code of Regulations ("CCR") §§ 93120-93120.12 (the "CARB Regulations"). The CARB Regulations apply to various wood products, including wood flooring products.  Phase 2 of the CARB regulations mandate that composite wood products sold in the State of California must emit no more than between 0.05 parts per million and 0.13 parts per million of

formaldehyde depending on whether the product is classified as a type of hardwood plywood or medium density fiberboard.

31.     On July 7, 2010, the federal Formaldehyde Standards for Composite Wood Products Act of 2010 was signed into law by President Obama. See 15 U.S.C. § 2697.

32.     Significantly, the federal Formaldehyde Standards Act adopted the same standards established by CARB as a nationwide standard. The comment period for the Environmental Protection Agency's proposed rules governing this statute is now closed and implementing regulations are expected to be released sometime this year.

### D. Lumber Liquidators' Chinese-Made Composite Wood Flooring

33.     Lumber Liquidators Lumber Liquidators has distributed, marketed, and sold, during the Class Period, various laminate flooring products that are manufactured in China (the "Chinese Flooring") as being compliant with "CARB regulations in the State of California."

34.     The Lumber Liquidators' Chinese Flooring products state in a uniform manner on the packaging that they are "California 93120 Phase 2 Compliant for Formaldehyde," which indicates that the Chinese Flooring Products meet the CARB emission standards for formaldehyde. This statement is false and misleading for the reasons described herein.

35.     On the Lumber Liquidators website, Defendants also make false and misleading statement about their CARB compliance.

36.     In addition, the product packaging for the Products states: "CARB …Phase 2 Compliant for Formaldehyde." On information and belief, this statement is presented on all of Lumber Liquidators' Products regardless of whether the flooring inside the package complied with CARB Regulations.

37.     According to CARB, "The label seen on panels and finished goods indicates that the product meets the California Air Resources Board's (CARB) stringent emission standards for formaldehyde emissions from composite wood products, including HWPW, PB, and MDF."

38.     Lumber Liquidators' purchase orders come with a warranty from the manufacturers/packagers stating that the Products comply "with all applicable laws, codes and regulations," and "bear all warnings, labels, and markings required by applicable laws and regulations." These representations also are false.

39.     Lumber Liquidators materially misrepresents the safety of its laminate wood flooring products by advertising its flooring products as compliant with the CARB limit when in fact they are not.

40.     Lumber Liquidators makes the material omission of failing to tell consumers that they are buying laminate wood flooring products with unlawfully high levels of formaldehyde.

41.     However, Lumber Liquidators does not comply with CARB regulations when selling and distributing the Chinese-made Flooring Products. Several independent tests conducted by certified laboratories reveal that the Chinese Flooring Products emit formaldehyde levels well beyond what is allowable by CARB regulations. These test results have shown that average formaldehyde exposures during testing exceeded the 0.05 to 0.11 parts per million as allowed under CARB regulations set forth in 17 CCR §§ 93120-93120.12, et seq.

42.     During the relevant time period, Plaintiffs purchased Chinese Flooring from Lumber Liquidators at a Lumber Liquidators stores located in North Carolina. On information and belief, the flooring was produced at a laminate mill in China.

43.     At the time that Plaintiffs purchased this laminate wood flooring, Lumber Liquidators falsely represented that the product was compliant with CARB formaldehyde

emission standards and was defect free. At the time of the purchase, Lumber Liquidators also failed to inform Plaintiffs that the laminate wood flooring product they purchased actually exceeded the CARB formaldehyde emission-limit and that formaldehyde is a chemical known to the State of North Carolina to cause cancer.

44.     Plaintiffs relied on Lumber Liquidators' misrepresentations/omissions regarding compliance with CARB formaldehyde emission standards when deciding to purchase the laminate wood flooring products and, as a result, paid Lumber Liquidators for a product they would not have otherwise purchased.

45.     Plaintiffs and other Class members would not have purchased the Chinese Flooring if they had known that the products were not compliant with CARB and that the Chinese Flooring emit unsafe levels of formaldehyde.

46.     Despite knowing of the defects in the Chinese Flooring, Lumber Liquidators has not notified all purchasers, builders, and/or homeowners with the Chinese Flooring of the defect nor provided uniform relief.

47.     Plaintiffs and Class members have not received the value for which they or their builder bargained when the Chinese Flooring was purchased. There is a difference in value between the Chinese Flooring as warranted and the Chinese Flooring containing the defect.

48.     Plaintiffs paid for CARB compliant products, but received products that were not CARB compliant. By purchasing Products in reliance on advertising that is false, Plaintiffs have suffered injury in fact and lost money as a result of the unfair business practices alleged here.

## CLASS ACTION ALLEGATIONS

49.     Plaintiffs bring this class action pursuant to Fed. R. Civ. P. 23. The requirements of Fed. R. Civ. P. 23(a), (b)(2), (b)(3) and (c)(4) are met with respect to the classes defined below:

**INJUNCTIVE RELIEF CLASS:**
**All persons and entities in the United States who purchased and installed wood flooring from Lumber Liquidators Holdings, Inc., either directly or through an agent, that was sourced, processed, or manufactured in China.**

**DAMAGES CLASS:**
**All persons and entities in the United States purchased and installed wood flooring from Lumber Liquidators Holdings, Inc., either directly or through an agent, that was sourced, processed, or manufactured in China.**

**(ALTERNATIVE) DAMAGES CLASS:**
**All persons and entities in North Carolina who purchased and installed wood flooring from Lumber Liquidators Holdings, Inc., either directly or through an agent, that was sourced, processed, or manufactured in China.**

Excluded from the Classes are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Lumber Liquidators, its affiliates, employees officers and directors, persons or entities that distribute or sell Lumber Liquidators flooring; (c) all persons who properly execute and file a timely request for exclusion from the Classes; and (d) the attorneys of record in this case.

50.     *Numerosity:* The Classes are composed of thousands of persons geographically dispersed, the joinder of whom in one action is impractical. Moreover, upon information and belief, the Classes are ascertainable and identifiable from Lumber Liquidator records or documents.

51. *Commonality*: Questions of law and fact common to the Classes exist as to all members of the Classes and predominate over any questions affecting only individual members of the Classes. These common legal and factual issues include, but are not limited to the following:

a. Whether Lumber Liquidators' Chinese Flooring products comply with CARB standards;

b. Whether Lumber Liquidators' Chinese Flooring products emit excessive levels of formaldehyde;

c. Whether Lumber Liquidators represented and warranted that its Chinese Flooring products complied with their label descriptions;

d. Whether Lumber Liquidators omitted and concealed material facts from its communications and disclosures to Plaintiffs and the other Class members regarding the illegal sourcing of its Chinese Flooring products;

e. Whether Lumber Liquidators breached its express or implied warranties to Plaintiffs and the other Class members with respect to its Chinese Flooring products;

f. Whether Lumber Liquidators knew or should have known that its Chinese Flooring did not conform to the label description;

g. Whether Lumber Liquidators' Chinese Flooring products damage other property in Plaintiffs' and Class Members' homes;

h. Whether, as a result of Lumber Liquidators' conduct, Plaintiffs and the other Class members have suffered damages; and if so, the appropriate measure of damages to which they are entitled;

i. Whether, as a result of Lumber Liquidators' conduct, Lumber Liquidators was unjustly enriched; and

j. Whether, as a result of Lumber Liquidators' misconduct, Plaintiffs and the other Class members are entitled to equitable relief and/or other relief, and, if so, the nature of such relief.

52. *Typicality:* Plaintiffs' claims are typical of the claims of the other Class members. Plaintiffs and each of the other Class members have been injured by the same wrongful practices

of Lumber Liquidators. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the other Class members' claims and are based on the same legal theories.

53.   *Adequate Representation:* Plaintiffs will fully and adequately assert and protect the interests of the other Class members. In addition, Plaintiffs have retained class counsel who are experienced and qualified in prosecuting class action cases similar to this one. Neither Plaintiffs nor their attorneys have any interests contrary to or conflicting with other Class members' interests.

54.   *Predominance and Superiority:* This class action is appropriate for certification because questions of law and fact common to the members of the Class predominate over questions affecting only individual members, and a Class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable. Should individual Class members be required to bring separate actions, this Court and Courts throughout North Carolina would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single Court.

55.   Plaintiffs bring this action pursuant to Rules 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of all others similarly situated.

## COUNT 1
### Negligence

56.   Plaintiffs, individually and on behalf of all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

57.     Lumber Liquidators were under a legal duty to exercise reasonable care to design, manufacture and distribute Chinese Flooring that would conform to all industry standards and codes.

58.     Lumber Liquidators breached its legal duty and was negligent in its design and/or manufacturer of its Chinese Flooring described herein. Lumber Liquidators' design and/or manufacture of the Chinese Flooring is inherently defective, in that the flooring emits unsafe levels of formaldehyde, causing damage to Plaintiffs' and the Class members' person and residences/structures.

59.     As a result of the defects described herein, Plaintiffs and Class members' homes contain unsafe and dangerous levels of formaldehyde gas. Plaintiffs have had to replace their HVAC and refrigerators because of problems caused by elevated levels of formaldehyde in their homes.

60.     As a result of the excessive levels of formaldehyde in the Chinese Flooring, the Chinese Flooring has damaged other property within Plaintiffs and Class Members' homes.

61.     As a result of Lumber Liquidators' practices, Plaintiffs' and the Class members' residences contain defective and dangerous Chinese Flooring that require replacement as well as repair of damages incidental thereto.

62.     Lumber Liquidators knew or, in the exercise of reasonable care, should have known that its Chinese Flooring was negligently designed and/or manufactured to allow for unsafe levels of formaldehyde emissions which will cause damage to Plaintiffs' and Class member's persons, wellbeing, and property and would not perform as expected by Plaintiffs, Class members and/or a reasonable consumer.

63.     Lumber Liquidators knew or, in the exercise of reasonable care, should have known that its Chinese Flooring was negligently designed and/or manufactured.

64.     Lumber Liquidators possessed the knowledge to cure the defect in the Chinese Flooring, but it continued to sell, to market and to advertise defective Chinese Flooring.

65.     Plaintiffs disclaimed any purported Limited Warranties.

66.     As a direct, proximate, reasonably probable and foreseeable consequence of Lumber Liquidators' negligent acts and/or omissions in connection with its design, manufacture and distribution of its Chinese Flooring, Plaintiffs and the Class members have suffered and will continue to suffer loss and damage.

67.     Plaintiffs have also suffered and will continue to suffer damage to other components of their homes. Due to the excessive formaldehyde levels, the Chinese Flooring has caused property damage to other components of Plaintiffs' homes, including but not limited to their HVAC and refrigerators.

## COUNT II
### Breach of Express Warranty

68.     Plaintiffs, individually and on behalf of all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

69.     Lumber Liquidators warranted that its flooring was free of defects when it sold those products to Plaintiffs and the members of the Class as described in this Complaint. Defendants further represented that its flooring products complied with CARB formaldehyde standards and all applicable laws and regulations. Plaintiffs and members of the Class reasonably relied upon these representations.

70.     Lumber Liquidators' express representations and warranties became part of the basis of the bargain.

71. Lumber Liquidators breached their warranties by:

    k. Manufacturing, selling and/or distributing flooring that exceeds the CARB formaldehyde standards;

    l. Manufacturing, importing, selling and/or distributing flooring that fails to comply with all applicable laws and regulations; and

    m. Refusing to honor the express warranty by refusing to properly repair or replace the defective flooring.

72. Plaintiffs relied on the representations that the Chinese Flooring was CARB compliant and did not emit excessive levels of formaldehyde.

73. Plaintiffs, individually and on behalf of the other Class members, provided Lumber Liquidators with timely notice of its breach of warranty. Lumber Liquidators was also on notice regarding the excessively high levels of formaldehyde in its flooring from the complaints and requests for refund it received from Class members, Internet message boards and from published product reviews.

74. As a direct and proximate result of Lumber Liquidators' misconduct, Plaintiffs and the other Class members have suffered damages and continue to suffer damages, including economic damages at the point of sale. Additionally, Plaintiffs and the other Class members have either incurred or will incur economic damages at the point of repair in the form of the cost of repair and/or the cost of purchasing non-defective flooring to replace the Lumber Liquidators' flooring.

75. Plaintiffs and the other Class members are entitled to legal and equitable relief against Lumber Liquidators, including damages, consequential damages, specific performance, rescission, attorneys' fees, costs of suit, and other relief as appropriate.

## COUNT III
### Breach of Implied Warranties

76.     Plaintiffs, individually and on behalf of all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

77.     At all times relevant hereto, there was a duty imposed by law which requires that a manufacturer or seller's product be reasonably fit for the purposes for which such products are used and that the product be acceptable in trade for the product description.

78.     Defendants breached this duty by selling flooring to Plaintiffs and the other members of the Class that was not merchantable and does not comply with CARB standards for formaldehyde emissions.

79.     Defendants were notified that its product was not merchantable within a reasonable time after the defect manifested itself to Plaintiffs and the members of the Class.

80.     As a result of the non-merchantability of Lumber Liquidators' flooring described herein, Plaintiffs and other members of the Class sustained a loss or damages.

## COUNT IV
### Violation of North Carolina Unfair and Deceptive Trade Practice
### N.C.G.S. §§ 75-1.1 et seq.
### (On behalf of Plaintiffs and North Carolina Class members)

81.     Plaintiffs, individually and on behalf of all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

82.     The conduct described above and throughout this Complaint took place within the State of North Carolina and constitutes unfair and deceptive trade practices in violation of North Carolina's Unfair and Deceptive Trade Practice, N.C.G.S. §§ 75-1.1 et seq.

83.    N.C.G.S. §§ 75-1.1 applies to the claims of Plaintiffs and all North Carolina Class members because the conduct which constitutes violations of the act by Lumber Liquidators occurred within the State of North Carolina.

84.    Lumber Liquidators engaged in the concealment, suppression, or omission in violation of N.C.G.S. §§ 75-1.1 when, in selling and advertising the Chinese Flooring, Lumber Liquidators knew that there were defects in the Chinese Flooring which would result in dangerous levels of formaldehyde gas emissions.

85.    Lumber Liquidators engaged in the concealment, suppression, or omission of the aforementioned material facts with the intent that others, such as Plaintiffs, Plaintiffs' builders, Class members, Class member's builders, and/or the general public would rely upon the concealment, suppression, or omission of such material facts and purchase Lumber Liquidators' Chinese Flooring containing said defect.

86.    Plaintiffs, Plaintiffs' builders, Class members, and/or Class member's builders would not have purchased the Chinese Flooring had they known or become informed of the material defects in the Chinese Flooring.

87.    Lumber Liquidators' concealment, suppression, or omission of material facts as alleged herein constitute unfair, deceptive and fraudulent business practices within the meaning of N.C.G.S. §§ 75-1.1.

88.    Lumber Liquidators has acted unfairly and deceptively by misrepresenting the quality of the Chinese Flooring.

89.    Lumber Liquidators either knew, or should have known, that the Chinese Flooring was defectively designed and/or manufactured and would emit unsafe levels of formaldehyde, which would result in severe damages to the Plaintiffs' persons and properties.

90.     Upon information and belief, Lumber Liquidators knew that, at the time Chinese Flooring left Lumber Liquidators' control, the Chinese Flooring contain the defect described herein resulting in dangerous levels of formaldehyde emissions. At the time of sale, the Chinese Flooring contained the defects. The defects permit unsafe levels of formaldehyde gas emission and rendered the flooring unable to perform the ordinary purposes for which it was used as well as cause the resulting damage described herein.

91.     As a direct and proximate cause of the violation of N.C.G.S. §§ 75-1.1, described above, Plaintiffs and members of the Class have been injured in that they have purchased the unsafe and dangerous Chinese Flooring based on nondisclosure of material facts alleged above. Had Plaintiffs and Class members known the defective nature of the Chinese Flooring used on their structures, they would not have purchased their structures, or would have paid a lower price for their structures.

92.     Plaintiffs and Class members reasonably relied upon Lumber Liquidators representations that the Chinese Flooring met and complied all applicable codes and standards, including but not limited to CARB.

93.     Lumber Liquidators used unfair methods of competition and unfair or deceptive acts or practices in conducting their businesses. This conduct constitutes fraud within meaning of the N.C.G.S. §§ 75-1.1. This unlawful conduct is continuing, with no indication that Lumber Liquidators will cease.

94.     As a direct and proximate result of Lumber Liquidators' unfair and deceptive acts and practices, Plaintiffs and the other members of the Class will suffer damages, which include, without limitation, costs to inspect, repair or replace their flooring and other property, including HVAC systems and refrigerators, in an amount to be determined at trial.

95.     As a direct and proximate result of Lumber Liquidators' unfair and deceptive acts and practices, Plaintiffs and the other members of the Class will suffer damages, which include, without limitation, to their health and wellbeing in an amount to be determined at trial.

96.     As a result of the acts of consumer fraud described above, Plaintiffs and the Class have suffered ascertainable loss in the form of actual damages that include the purchase price of the products for which Lumber Liquidators is liable to the Plaintiffs and the Class for treble their ascertainable losses, plus attorneys' fees and costs, along with equitable relief prayed for herein in this Complaint.

## COUNT V
## Fraudulent Misrepresentation

97.     Plaintiffs, individually and on behalf of all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

98.     Lumber Liquidators falsely and fraudulently represented to Plaintiffs, the Class members, and/or the consuming public in general that Lumber Liquidators' products would be free from defects and fit for their customary and normal use and would comply with CARB standards.

99.     Lumber Liquidators falsely represented to purchasers, consumer, and owners that the Chinese Flooring was warranted against defects in material and workmanship when in fact the Limited Warranty was so limited as to prevent and preclude any warranty protection against the known defect in the Chinese Flooring.

100.    When said representations about CARB compliance were made by Lumber Liquidators, upon information and belief, they knew those representations to be false and they willfully, wantonly, and recklessly disregarded whether the representations were true.

101.   These representations were made by Lumber Liquidators with the intent of defrauding and deceiving the Plaintiffs, the Class members and/or the consuming public, all of which evinced reckless, willful, indifference to the safety and welfare of the Plaintiffs and the Class members.

102.   At the time the aforesaid representations were made by Lumber Liquidators, Plaintiffs and the Class members were unaware of the falsity of said representations and reasonably believed them to be true.

103.   In reliance upon said representations about CARB compliance, the Plaintiffs' and Class members' properties were built using Lumber Liquidators' Chinese Flooring, which were installed and used on Plaintiffs' and the Class members' properties thereby sustaining damage and injury and/or being at an increased risk of sustaining damage and injury in the future.

104.   Lumber Liquidators knew and was aware, or should have been aware, that Lumber Liquidators' Chinese Flooring was defective and not fit for their customary and normal use and did not comply with CARB standards.

105.   Lumber Liquidators knew, or should have known, that Lumber Liquidators' Chinese Flooring did not comply with CARB standards and had a potential to, could, and would cause severe damage and injury to property owners.

106.   Lumber Liquidators brought its Chinese Flooring to the market and acted fraudulently, wantonly, and maliciously to the detriment of the Plaintiffs and the Class members.

107.   By reason of the foregoing, Plaintiffs and the Class members suffered, and continue to suffer, financial damage and injury.

## COUNT VI
## <u>Negligent Misrepresentation</u>

108.    Plaintiffs, individually and on behalf of all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

109.    Lumber Liquidators made representations about the Chinese Flooring to Plaintiffs, Class members, and their agents or predecessors, as set forth in this complaint that their Chinese Flooring complied with CARB standards.

110.    Those representations about CARB compliance were false.

111.    When Lumber Liquidators made the representations, it knew they were untrue or it had a reckless disregard for whether they were true, or it should have known they were untrue.

112.    Lumber Liquidators knew that Plaintiffs, Class members, and their agents or predecessors, were relying on the representations about CARB compliance.

113.    In reliance upon the representations about CARB compliance and formaldehyde emissions, Plaintiffs and Class members purchased the Chinese Flooring and installed on the Plaintiffs' and Class members' homes.

114.    As a direct and proximate result of Lumber Liquidators negligent misrepresentations, Plaintiffs and Class members have been damaged as set forth in this Complaint.

115.    As a direct and proximate result of the foregoing, Plaintiffs and the Class members suffered, and continue to suffer, financial damage and injury, and are entitled to all damages, including punitive damage, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

## COUNT VII
### Fraudulent Omission/Concealment

116.    Plaintiffs, individually and on behalf of all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

117.    Lumber Liquidators knew or should have known that the Chinese Flooring was defective in design, were not fit for their ordinary and intended use, and performed in accordance with neither the advertisements, marketing materials and warranties disseminated by Lumber Liquidators nor the reasonable expectations of ordinary consumers.

118.    Lumber Liquidators fraudulently concealed from and/or intentionally failed to disclose to Plaintiffs and the Class that the Chinese Flooring is defective.

119.    Lumber Liquidators had exclusive knowledge of the defective nature of the Chinese Flooring at the time of sale. The defect is latent and not something that Plaintiffs or Class members, in the exercise of reasonable diligence, could have discovered independently prior to purchase, because it is not feasible.

120.    Lumber Liquidators had the capacity to, and did, deceive Plaintiffs and Class members into believing that they were purchasing flooring free from defects.

121.    Lumber Liquidators undertook active and ongoing steps to conceal the defect. Plaintiffs are aware of nothing in Lumber Liquidators' advertising, publicity or marketing materials that disclosed the truth about the defect, despite Lumber Liquidators' awareness of the problem.

122.    The facts concealed and/or not disclosed by Lumber Liquidators to Plaintiffs and the Class members are material facts in that a reasonable person would have considered them important in deciding whether to purchase (or to pay the same price for) the flooring from their builders.

123.   Lumber Liquidators intentionally concealed and/or failed to disclose material factors for the purpose of inducing Plaintiffs and the Class to act thereon.

124.   Plaintiffs and the Class justifiably acted or relied upon the concealed and/or nondisclosed facts to their detriment, as evidenced by their purchase of the Chinese Flooring.

125.   Plaintiffs and Class members suffered a loss of money in an amount to be proven at trial as a result of Lumber Liquidator's fraudulent concealment and nondisclosure because: (a) they would not have purchased the Chinese Flooring on the same terms if the true facts concerning the defective flooring had been known; (b) they paid a price premium due to fact that the flooring would be free from defects; and (c) the flooring did not perform as promised. Plaintiffs also would have initiated this suit earlier had the defect been disclosed to him.

126.   By reason of the foregoing, Plaintiffs and the Class members suffered, and continue to suffer, financial damage and injury.

## COUNT VIII
### Unjust Enrichment
### (Pleading in the Alternative)

127.   Plaintiffs, individually and on behalf of all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

128.   Plaintiffs and Class members conferred a benefit on Defendants when they purchased the Chinese Flooring.

129.   Lumber Liquidators has been unjustly enriched in retaining the revenues derived from Class members' purchases of the Chinese Flooring, the retention of which under these circumstances is unjust and inequitable because Lumber Liquidators' Chinese Flooring is defective in design, were not fit for their ordinary and intended use, and performed in accordance with neither the advertisements, marketing materials and warranties disseminated by Lumber

Liquidators nor the reasonable expectations of ordinary consumers and caused the Plaintiffs and Class members to lose money as a result thereof.

130.    Plaintiffs and Class members suffered a loss of money as a result of Lumber Liquidators' unjust enrichment because: (a) they would not have purchased the Chinese Flooring on the same terms if the true facts concerning the unsafe Chinese Flooring had been known; (b) they paid a price premium due to the fact the Chinese Flooring would be free from defects; and (c) the Chinese Flooring did not perform as promised.

131.    Because Lumber Liquidators' retention of the non-gratuitous benefit conferred on them by Plaintiffs and Class members is unjust and inequitable, Lumber Liquidators must pay restitution to Plaintiffs and the Class members for their unjust enrichment, as ordered by the Court.

132.    Plaintiffs and the Class members are entitled to restitution of, disgorgement of, and/or the imposition of the constructive trust upon, all profits, benefits, and other compensation obtained by the Defendants from their deceptive, misleading, and unlawful conduct.

## COUNT IX
## Violation of the Magnuson-Moss Warranty Act

133.    Plaintiffs, individually and on behalf of all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

134.    Plaintiffs and the other Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

135.    Lumber Liquidators is a "supplier" and "warrantor" within the meaning of 15 U.S.C. §§ 2301(4)-(5).

136.    Lumber Liquidators flooring purchased separate from the initial construction of the structure constitutes a "consumer product" within the meaning of 15 U.S.C. § 2301(1).

137.    Lumber Liquidators' express warranties and written affirmations of fact regarding the nature of the flooring, including that the flooring was free from defects and was in compliance with CARB and EU formaldehyde standards and all other applicable laws and regulations, constitute written warranties within the meaning of 15 U.S.C. § 2301(6).

138.    Lumber Liquidators breached their warranties by:

n.    Manufacturing, selling and/or distributing flooring that exceeds the CARB formaldehyde standards;

o.    Manufacturing, importing, selling and/or distributing flooring that fails to comply with all applicable laws and regulations; and

p.    Refusing to honor the express warranty by refusing to properly repair or replace the defective flooring.

139.    Lumber Liquidators' breach of its express warranties deprived Plaintiffs and the other Class members of the benefits of their bargains.

140.    As a direct and proximate result of Lumber Liquidators' breaches of its written warranties, Plaintiffs and the other Class members sustained damages in an amount to be determined at trial. Lumber Liquidators' conduct damaged Plaintiffs and the other Class members, who are entitled to recover damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, rescission, and/or other relief as appropriate.

**COUNT X**
**Declaratory Relief 28 U.S.C. § 2201**
**(Pleading in the Alternative)**

141.    Plaintiffs, individually and on behalf of all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

142.    Lumber Liquidators has acted or refused to act on grounds that apply generally to the Declaratory Relief Class, so that final injunctive relief or corresponding declaratory relief is

appropriate respecting the Class as a whole within the meaning of Fed. R. Civ. P. 23(b)(2).

Plaintiffs seek a ruling that:

q.  the Chinese Flooring has a defect which results in unsafe levels of formaldehyde emissions. The Court finds that this defect if material and requires disclosure for all of this flooring;

r.  the Chinese Flooring has a defect that allows for unsafe levels of formaldehyde emissions. The court declares that all persons who own structures containing Chinese Flooring are to be provided the best practicable notice of the defect, which cost shall be borne by Lumber Liquidators;

s.  Lumber Liquidators will establish an inspection program and protocol, under Court supervision, to be communicated to class members, which will require Lumber Liquidators to inspect, upon request, a class member's structure to determine formaldehyde emissions levels are safe. Any disputes over coverage shall be adjudicated by a Special Master appointed by the Court and/or agreed to by the parties.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all other similarly situated, pray for a judgment against Defendants as follows:

a.  For an order certifying the Classes, pursuant to Fed. R. Civ. P. Rule 23, appointing Plaintiffs as representatives of the Classes, and appointing the law firms representing Plaintiffs as Class Counsel;

b.  For compensatory damages sustained by Plaintiffs and the Damages Class;

c.  For equitable and/or injunctive relief for the Declaratory Relief Class;

d.  For payment of costs of suit herein incurred;

e.  For both pre-judgment and post-judgment interest on any amounts awarded;

f.  For punitive damages;

g.  For payment of reasonable attorneys' fees and expert fees as may be allowable under applicable law; and For such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs, individually and on behalf of the Class members, hereby demand a trial by jury as to all issues so triable.

Date: April 8, 2015.

Respectfully submitted,

*/s/ Daniel K. Bryson*
Daniel K. Bryson
Scott C. Harris
Margaret J. Pishko
WHITFIELD BRYSON & MASON, LLP
900 West Morgan Street
Raleigh, North Carolina 27603
(919) 600-5000
Fax:  (919) 600-5035
dan@wbmllp.com
scott@wbmllp.com
maggie@wbmllp.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Amended Complaint was electronically filed using the Court's electronic case filing system (CM/ECF), which automatically sent a notice of electronic filing to the e-mail addresses of all counsel of record who have properly registered for such electronic service and by mailing a true and accurate copy of same to:

> Lumber Liquidators, Inc.
> c/o Corporation Service Co.
> 2711 Centerville Road, Suite 400
> Wilmington, DE  19808
>
> Lumber Liquidators Services, LLC
> c/o Corporation Service Co.
> 2711 Centerville Road, Suite 400
> Wilmington, DE  19808
>
> Lumber Liquidators Leasing
> c/o Corporation Service Co.
> 2711 Centerville Road, Suite 400
> Wilmington, DE  19808
>
> Lumber Liquidators Holdings, Inc.
> c/o Corporation Service Co.
> 2711 Centerville Road, Suite 400
> Wilmington, DE  19808

Dated: April 8, 2015.

Respectfully submitted,

   /s/ Daniel K. Bryson
Daniel K. Bryson
WHITFIELD BRYSON & MASON LLP
900 W. Morgan Street
Raleigh, North Carolina 27609
Telephone: 919-600-5000
Facsimile: 919-600-5035
dan@wbmllp.com