IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| IN RE: LUMBER LIQUIDATORS CHINESE-MANUFACTURED FLOORING PRODUCTS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL No. l:15-md-02627 (AJT/TRJ) |
| --- | --- |
| This Document Relates to ALL Cases | |

**MEMORANDUM OPINION AND ORDER**

**(Privilege Log Issues)**

On December 18, 2015, pursuant to the court's directive at the previous status hearing, the parties submitted *in camera* a joint brief setting out their positions on defendant's claims of attorney-client privilege and/or work product protection for three categories of documents and ESI otherwise responsive to plaintiffs' requests for production. Defendant contemporaneously tendered *in camera* representative samples of each of the three categories of material.

The court treats the joint brief as plaintiffs' motion to compel and defendant's response in opposition, and the Clerk will docket it accordingly. Because the brief contains material subject to the protective order, the Clerk will file it under seal. The exhibits to the brief and the sample material will be maintained in paper form until further order.

The present memorandum opinion and order does not contain confidential material and will not be sealed.

This memorandum opinion and order is in the nature of a bench ruling, and will not be published. As in a bench ruling, the authorities relied upon are established Fourth Circuit and Virginia precedents and those cited by the party whose position the court is accepting.

**Discussion and Findings**

Because the representative plaintiffs pursue claims under federal law and the laws of several states, a choice of law issue might arguably exist in application of Fed. R. Evid. 501. The court finds resolution of the issues presently presented to be sufficiently clear that no such issue exists.

The three categories of material in issue are documents and ESI relating to three contractors that performed services for defendant: (1) Mercury Public Affairs, (2) Benchmark International, and (3) Pure Air. The representative samples include materials such as agreements, reports, and emails among various combinations of contractor personnel, defendant's personnel, and defendant's attorneys.

**(1) Mercury Public Affairs**

Defendant hired Mercury to provide various and expanding services described in summary as "crisis management" as the events leading to litigation unfolded. Defendant contends that Mercury was so tightly integrated into defendant's damage control operation that Mercury's personnel became "the functional equivalent of employees," so that it meets the standard for inclusion within the attorney-client privilege. The court agrees that Mercury's relationship with defendant meets that standard, so that its personnel would not be privilege-negating "outsiders," and any communication involving Mercury that otherwise met the standard for invocation of the privilege would qualify for non-disclosure.

However, under any applicable articulation of the privilege's requirements, the communication must be part of the process of seeking, developing, or conveying legal advice or strategy. To qualify for work product protection the material must be "prepared in anticipation of litigation or for trial." Fed. R. Civ. P. 26(b)(3)(A). With minor exceptions, the representative

material relating to Mercury is not privileged, and does not qualify for work product protection, because it has no relationship whatever to *legal* advice or strategy and was not prepared in anticipation of litigation or for trial. Except occasionally with respect to CARB, and in Exhibit 13 as to another agency, the court finds that counsel engaging with Mercury personnel were assisting defendant only in the business activity of managing a public/customer relations crisis, with no observable interface, much less overlap, between that effort and one to plan the defense of claims made in litigation.

The unquestioned fact that defendant expected litigation does not *ipso facto* render its business activities in anticipation of litigation. The fact that defendant's attorneys were communicating with defendant's "marketing team" about "crisis management" does not convert business strategy into legal strategy or advice. Even the occasional reference to "a lawsuit," e.g. the comment in the penultimate sentence on Exhibit 15 (see Joint Brief at footnote 8 and related text) is made in the business context.

There are a few communications involving Mercury that relate to possible administrative proceedings before CARB or another agency and how to deal with that agency in that context. When Mercury personnel participated in communication about interaction with an agency (e.g. the redacted portion of Exhibit 5) as distinguished from public relations efforts, then that material may be redacted or withheld. All the rest of the material tendered for review (e.g. beginning with "Second …" in the redacted portion of Exhibit 7) relates to counsel involved in quintessential business advice as distinguished from legal advice or strategy, and it and all similar material must be produced.

If defendant contends that other, dissimilar material relating to Mercury's work is privileged or protected, defendant may log and produce it for *in camera* review.

**(2) Benchmark International**

Benchmark had previously been hired by defendant to conduct regular, routine testing to monitor products' compliance with various standards, and defendant does not claim protection for communications and test results relating to that routine work.

Defendant then engaged Benchmark on four occasions to conduct separate, special tests as part of defendant's investigation of the claims that ultimately led to this and other litigation. Defendant asserts that the results of those four groups of tests are work product, and the court agrees. In the situation revealed by the record before the court, it is clear that these tests were performed by Benchmark as defendant's agent as part of preparation for litigation, and they are work product within the ambit of Rule 26.

The test results are not opinion work product within the meaning of the rule, however. They report facts only, and the testers' opinions that the results are correct do not convert them into opinion work product. Plaintiffs argue that even if these test results fall within the Rule on initial analysis, they are still entitled to them under the substantial need exception. On this discrete issue the court needs oral argument, which will be heard at the status hearing on January 5, 2016.

Defendant also asserts that communications between or including Benchmark personnel and counsel and between Benchmark and defendant relating to litigation are protected by the attorney-client privilege. The court disagrees.

The court finds that Benchmark was clearly and unambiguously defendant's agent, rather than counsel's agent, at all relevant times. The facts that Benchmark was bound by a confidentiality agreement, that it began taking instructions from counsel at some point, and that

counsel later wrote correspondence attempting to bring Benchmark within the privilege do not alter Benchmark's status as defendant's agent rather than counsel's.

Unlike agents of counsel representing a client, the client's agents are generally, and presumptively, not within the protected circle of privileged attorney-client communications. Relatively uncommon situations such as the court has found above regarding Mercury in the present case (had its communications related to legal instead of business matters) are exceptions to that general rule. Benchmark, unlike Mercury, was a typical outside contractor performing discrete tasks, reporting pre-requested facts and neither providing additional information or advice to the client or counsel, nor needing input much less advice from them. The court finds that defendant has not met its burden to show that communications to, from, or including Benchmark are protected by the attorney-client privilege.

Defendant also attempts to rely on the common interest doctrine, which is inapposite to say the least.

If the court does not require disclosure of test results because of specialized need as discussed above, then to preserve the work product in the test results defendant may redact such results from any communications in addition to withholding the reports. With that exception, all communications from, to, or including Benchmark must be produced because they are not privileged.

**(3) Pure Air**

Defendant hired Pure Air to provide and evaluate the home test kits that defendant offered to concerned customers as part of its public relations effort following reports of problems with the subject flooring. Pure Air was defendant's agent. Its activities had nothing to do with legal advice or strategy. The record does not reveal any basis for finding either that Pure Air's

efforts have work product protection or that communications with it or including it are privileged. The court finds that defendant has not met either of these burdens, and all such documents and ESI must be produced.

**Production of the Material**

With the exceptions allowed above, defendant shall produce the representative materials included as exhibits to the joint brief on December 31, 2015, unless it files a Rule 72 Objection to one or more rulings in this order by December 30, 2015. If defendant files an Objection, Judge Trenga will hear argument on it at the regular hearing on January 5, 2016, using the joint brief and its exhibits and no additional briefing.

Additional production if any depends on those contingencies, but defendant should be prepared for prompt production after January 5, 2016.

**Claw Back Issue**

With respect to the document for which defendant asserts inadvertent production, the parties shall comply with the procedure set out in their stipulated order (no. 618), and the court will consider any motion filed pursuant to section VI(C)(5) thereof.

On these findings and to this extent the motion is granted in part, denied in part, and deferred in part, and it is so ORDERED.

December 28, 2015
Alexandria, Virginia

__________________/s/______________
THOMAS RAWLES JONES, JR.
United States Magistrate Judge