IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| IN RE: LUMBER LIQUIDATORS )<br>CHINESE-MANUFACTURED FLOORING )<br>PRODUCTS MARKETING, SALES )<br>PRACTICES AND PRODUCTS LIABILITY )<br>LITIGATION )<br>_____ ) | MDL No. 1:15-md-2627 (AJT/TRJ) |

This Document Relates to ALL Cases
_____

**MEMORANDUM OPINION**
(Defendant's Motion for Summary Judgment on Plaintiffs'
First Amended Representative Class Action Complaint)

Presently pending before the Court is Defendant Lumber Liquidators, Inc.'s Motion for

Summary Judgment on Plaintiffs' First Amended Representative Class Action Complaint [Doc.

No. 999]) (the "Motion").[1]

Upon consideration of the Motion, the memoranda in support thereof and in opposition

thereto, the arguments of counsel at the hearing held on September 13, 2016, and for the reasons

set forth below, the Motion will be GRANTED as to (1) all claims filed by Laura Washington;

(2) those claims filed by the Cloudens (New York plaintiffs), the Burkes (Illinois plaintiffs), and

Lila Washington (California plaintiff) for fraudulent concealment (Count I); (3) all claims filed

by all Plaintiffs for violations of the California False Advertising Law (Count III), the California

Legal Remedies Act (Count IV), and the Illinois Consumer Fraud and Deceptive Business

Practices Act (Count VIII); and (4) all Plaintiffs' demands for declaratory relief (Count XII).

_____

[1] These Plaintiff were selected by Plaintiffs' lead counsel to be Representative Plaintiffs in the First Amended
Representative Class Action Complaint [Doc. No. 562] (the "FAC"), which was filed pursuant to Pretrial Order No.
5 [Doc. No. 528]. The FAC does not displace any of the underlying complaints that have been referred to the Court
in this MDL. However, the rulings with respect to the FAC will apply to all claims asserted in each Plaintiff's
complaint unless a Plaintiff shows that a claim is materially different legally or factually from those considered in
the FAC. *See* Pretrial Order No. 1 [Doc. No. 10] at 20 ("The Court intends to decide such motions on a
representative basis and apply its decision on a representative motion to similar motions in all other cases, except to
the extent that different cases or classes of cases present materially different legal issues.").

The Motion is otherwise DENIED, and the following claims will remain for adjudication: (1) claims filed by Lila Washington, the Ronquillos, and Mr. Balero (California plaintiffs) and the Florida and Texas plaintiffs for fraudulent concealment (Count I); (2) claims filed by Lila Washington, the Ronquillos, and Mr. Balero (California plaintiffs) under the California Unlawful, Unfair, or Fraudulent Business Acts and Practices Law (Count II); (3) the Brandts' (Florida plaintiffs) claims under the Florida Deceptive and Unfair Trade Practices Act (Count V); (4) the Parnellas' (Texas plaintiffs) claims under the Texas Deceptive Trade Practices Act (Count VII); (5) the Cloudens' (New York plaintiffs) claims under New York General Business Law Section 349 (Count VI); (6) all Plaintiffs' claims for breach of implied warranty and violations of the Magnuson-Moss Warranty Act (Counts IX-X); and (7) the Brandts' (Florida plaintiffs) claims for negligent misrepresentation (Count XI).

## I.    Claims and Procedural History

Plaintiffs collectively have asserted the following twelve causes of action in the FAC.[2]

Count I: fraudulent concealment (by all Plaintiffs and all classes) (FAC ¶¶ 156-64);

Count II: violation of the California Unlawful, Unfair, or Fraudulent Business Acts and Practices Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.* (by the Washingtons and Ronquillos, Mr. Balero, and the California class) (*id.* ¶¶ 165-76);

Count III: violation of the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.* (by the Washingtons and Ronquillos, Mr. Balero, and the California class) (*id.* ¶¶ 177-82);

Count IV: violation of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.* (by the Washingtons and Ronquillos, Mr. Balero, and the California class) (*id.* ¶¶ 183-93);

---

[2] The Plaintiffs seek class certification with respect to each of these counts pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3), which the Court will consider as to any remaining claims in accordance with the outstanding litigation schedule. *See* Pretrial Order No. 8 [Doc. No. 722] at 25 (deferring consideration of Plaintiffs' class action allegations, noting that "a definitive ruling on this issue is premature and [the Court] will defer ruling until it takes up [P]laintiffs' affirmative motion to certify this case as a class action, not only under Rule 23(b)(2) but also under Rule 23(b)(3).").

<u>Count V</u>: violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.* (by the Brandts and the Florida class) (*id.* ¶¶ 194-202);

<u>Count VI</u>: violation of N.Y. Gen. Bus. Law § 349, *et seq.* (by the Cloudens and the New York class) (*id.* ¶¶ 203-16);

<u>Count VII</u>: violation of the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code § 17.50, *et seq.* (by the Parnellas and the Texas class) (*id.* ¶¶ 217-26);

<u>Count VIII</u>: violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. § 505/1, *et seq.* (by the Burkes and the Illinois class) (*id.* ¶¶ 227-38);

<u>Count IX</u>: breach of implied warranty (by all Plaintiffs and all classes) (*id.* ¶¶ 239-47);

<u>Count X</u>: violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* ("MMWA") (by all Plaintiffs and all classes) (*id.* ¶¶ 248-58);

<u>Count XI</u>: negligent misrepresentation (by the Brandts and the Florida class[3]) (*id.* ¶¶ 259-62); and

<u>Count XII</u>: declaratory relief (by all Plaintiffs and all classes) (*id.* ¶¶ 266-67).

On October 7, 2015, Defendant Lumber Liquidators, Inc. ("Lumber Liquidators" or "LL") filed a "Motion to Dismiss First Amended Representative Class Action Complaint and to Strike Plaintiffs' Request for Injunctive Relief Classes" [Doc. No. 597] (the "Motion to Dismiss"). On December 1, 2015, the Court held a hearing, and on December 11, 2015, it dismissed the claims for negligent misrepresentation filed in Count XI on behalf of all Plaintiffs other than Ryan and Kristin Brandt and the Florida class and otherwise denied the Motion to Dismiss.

On August 1, 2016, Defendant filed a motion for summary judgment, which is now before the Court. Briefly summarized, Lumber Liquidators seeks summary judgment on Plaintiffs' claims principally on the grounds that (1) LL did not violate the Airborne Toxic Control Measure to Reduce Formaldehyde Emissions from Composite Wood Products

---

[3] Count XI was initially asserted on behalf of all Plaintiffs and all classes, but the Court dismissed the claims for negligent misrepresentation (Count XI) on behalf of all Plaintiffs other than the Brandts and the Florida class.

("ATCM"), and therefore did not violate any state consumer protection laws or breach any warranties, (2) Plaintiffs lack standing to sue because they did not rely on any sufficiently identified misrepresentations and were not injured in any legally cognizable way as a result, and (3) Plaintiffs are not entitled to the relief sought, including declaratory or injunctive relief.

## II.    FACTS

Unless otherwise indicated, the following facts are undisputed or, where they are disputed, viewed most favorably to the Plaintiffs, as the non-moving party:

### A.    Lumber Liquidators' Business and Applicable Regulations

Defendant Lumber Liquidators is a retail seller of certain composite wood-based laminate products, including the Chinese-manufactured composite wood flooring that is the subject of this litigation (the "Products"), which it distributed, marketed, and sold in California, Florida, Illinois, New York, and Texas, where the representative Plaintiffs purchased the Products, as well as in other states.  Defendant's Memorandum in Support of its Motion for Summary Judgment [Doc. No. 1000] ("Def.'s Mem.") ¶ 1.

The State of California has established the California Air Resources Board ("CARB"). CARB lists formaldehyde as a toxic air contaminant with no safe level of exposure and has set comprehensive and stringent formaldehyde emission standards, which serve as a model for national standards considered by, among other regulatory entities, the United States Environmental Protection Agency.  *Id.*  No other state or federal agency regulates formaldehyde in laminate flooring or MDF cores.  Def.'s Mem. ¶ 3.

In April 2007, CARB approved the ATCM, which appears publicly as Cal. Code Regs. tit. 17, § 93120.  The ATCM became effective in January 2009 and sets limits for decreasing formaldehyde levels in two phases.  The second phase standard, which was in operation when

the events described in this litigation took place, states that regular medium density fiberboard ("MDF") and "thin" MDF products, such as those at issue here, should emit no more than 0.11 ppm and 0.13 ppm of formaldehyde, respectively. ATCM § 93120.2. The CARB regulations also specify testing methods that may be used to determine whether products meet the CARB emissions limits. Although CARB standards only apply to products sold in California, Def.'s Mem. ¶ 3, Defendant represented nationwide, both on its website and on its packaging, that its Products met CARB standards. FAC ¶¶ 9, 13; Defendant's Answer [Doc. No. 599] ("Def.'s Answer") 3-4 (not contesting the allegations).

**B.     Formaldehyde Testing Results**

In October 2013, CARB notified Lumber Liquidators that certain tested Products had failed CARB's emissions testing, including some Products that were eventually resold to Plaintiffs. Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment [Doc. No. 1017] ("Pls.' Mem. Opp'n") ¶ 20. Defendant then retained a separate laboratory, Benchmark International, which separately confirmed that at least several of the Products exceeded CARB's standards. Nevertheless, Defendant did not modify its website following CARB's and Benchmark's findings. *Id.* ¶ 21. However, on the same day that CARB notified Lumber Liquidators of further CARB test results indicating impermissible formaldehyde levels (May 7, 2015), Lumber Liquidators suspended all sales of its Products. *Id.* ¶ 22.

On March 1, 2015, the CBS television news program *60 Minutes* presented a segment on Lumber Liquidators' Products, which included allegations that the Products contained dangerous levels of formaldehyde. Def.'s Mem. ¶ 5. Responding to the *60 Minutes* segment, Lumber Liquidators' CEO stated in a letter dated March 2, 2015 posted on its website that its products are "100% safe" and that Lumber Liquidators "compl[ies] with applicable regulations regarding

our products, including California standards for formaldehyde emissions for composite wood products . . . ." FAC ¶ 45; *see* Def.'s Answer 8-9 (not contesting the allegations). The parties dispute to what extent Lumber Liquidators and its leadership knew about the levels of formaldehyde in its Products prior to the *60 Minutes* report. Nevertheless, the Plaintiffs have produced evidence sufficient, when viewed most favorably to them, for a fact finder to reasonably conclude that Lumber Liquidators, including its top management, were on notice that certain of its Products were not CARB compliant as advertised.[4]

In March 2016, following the conclusion of a CARB investigation into Lumber Liquidators' products and practices, CARB and Lumber Liquidators agreed to a settlement. *See* Defendant's Reply Memorandum in Support of its Motion for Summary Judgment [Doc. No. 1028] ("Def.'s Reply") 3, Pls.' Mem. Opp'n ¶ 23. Although Lumber Liquidators admitted no liability or wrongdoing, CARB stated in its announcement of the settlement that "ARB testing showed exceeded state formaldehyde limits, and . . . Lumber Liquidators failed to take reasonable prudent precautions to ensure those products met such limits designed to protect public health." Pls.' Mem. Opp'n ¶ 23.[5]

## II.    LEGAL STANDARD

The party seeking summary judgment has the initial burden to show the absence of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

---

[4] For example, on March 12, 2015, CBS News published a story on its website reporting that then-CEO Robert Lynch, on a conference call with investors, admitted that CARB tests on Lumber Liquidators' samples had revealed "high levels of formaldehyde" *prior to* the *60 Minutes* broadcast. FAC ¶ 49; *see* Def.'s Answer 9 (not contesting the allegations).

[5] The Consumer Product Safety Commission ("CPSC") separately found, based on studies done by the Centers for Disease Control ("CDC"), that the Chinese laminates could contribute between six and thirty cases of cancer per year for every 100,000 people exposed. The CPSC did not demand a recall, but Defendant agreed to forego selling all of the Chinese laminates, as previously described. Pls.' Mem. Opp'n ¶¶ 25-26.

party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1984). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). To defeat a properly supported motion for summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 247-48 ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."). Whether a fact is considered "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party. *Id.* at 255; *see also Lettieri v. Equant Inc.*, 478 F.3d 640, 642 (4th Cir. 2007).

## III.     ANALYSIS OF ISSUES APPLICABLE TO MULTIPLE CLAIMS

Defendant seeks dismissal of many of the Plaintiffs' claims in the First Amended Complaint based on the following issues:

### A.     Standing

Defendant challenges the Plaintiffs' standing to assert their claims principally on the grounds that they have not sustained sufficient injury in fact. More specifically, Defendant contends that Plaintiffs' theory of injury and damages, the "price distortion theory" or "price inflation theory," is not a constitutionally sufficient theory of injury that can establish Article III standing and that, in any event, Plaintiffs have failed to present evidence sufficient to establish damages even under that theory. For the reasons stated below, the Court concludes that

Plaintiffs have standing under the price distortion theory and that, because discovery as to Plaintiffs' individualized damages has been stayed pending the Court's ruling on Defendant's summary judgment motion and class certification issues,[6] Defendant may not obtain summary judgment at this point based on a failure to present evidence sufficient to establish a specific amount of damages under the price distortion theory.

At the summary judgment stage, in order to establish standing, the plaintiff must set forth specific facts to demonstrate that (1) he or she has "suffered an 'injury in fact' . . . which is (a) concrete and particularized . . . and (b) 'actual or imminent, not conjectural or hypothetical"; (2) there exists "a causal connection between the injury and the conduct complaint of"; and (3) "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations omitted).

Plaintiffs' price distortion theory of injury is based on the claim that "if Defendant had told the truth about its Chinese-made laminates, it could not have sustained the prices it charged." Pls.' Mem. Opp'n 21. Under that theory, Plaintiffs are entitled to recover for the difference in value between the Products as represented and what they actually received. As to the measure of damages, Plaintiffs assert that "[o]nce the truth came out about the dubious reliability of the CARB certifications, the products' value plummeted to zero, as it was pulled from the market, never to be sold again."[7] Pls.' Mem. Opp'n 22. Thus, the essence of their claim is that they overpaid for the flooring they purchased based on Defendant's misrepresentations and that, had LL not provided the various assurances concerning the

---

[6] *See* Doc. No. 592.
[7] Although particular counts of Plaintiffs' complaint also reference "consequential damages" such as the cost to remove the Products and install new flooring, *see, e.g.*, FAC ¶¶ 247, 258, Plaintiffs have not raised those potential damages on summary judgment and, therefore, appear to have abandoned that theory of damages.

formaldehyde content of the flooring, it could not have obtained the prices it was charging.  In other words, the Products would have had to have been priced lower and Plaintiffs would have, in turn, paid a lower price than they did.

Defendant challenges the price distortion theory, and Plaintiffs' standing based on it, on the grounds that there is no causal link between Defendant's actions and any injury they allege. More specifically, Defendant contends that in the absence of reliance on the alleged misrepresentations, Plaintiffs' price distortion theory is not sufficiently anchored in an injury in fact to confer standing.[8]  In short, Defendant essentially conflates the issue of reliance with Article III standing.

The price distortion theory has various articulations, but it appears in substance to be simply a benefit-of-the-bargain theory and measure of damages that is not materially different from a generally accepted breach of warranty measure of damages.  *See Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 986-87 (11th Cir. 2016); U.C.C. § 2-714 ("The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.").  Neither the U.S. Supreme Court nor the Fourth Circuit has ruled on whether the price distortion theory is constitutionally sufficient to confer standing.  The case law is otherwise mixed: while some of the cases Defendant cites support its position,[9] others it cites either support Plaintiffs' position or

---

[8] Reliance as an element of the Plaintiffs' various claims is dealt with *infa* in Section III(B), while the Court deals in this section with the more generalized notion that Plaintiffs have not shown sufficient particularized injury to confer standing.

[9] *See In re Activated Carbon-Based Hunting Clothing Mktg. and Sales Prices Litig.*, No. 09-md-2059, 2010 WL 3893807, at *2 (D. Minn. Sept. 29, 2010) (Although "plaintiffs might be able to bring a class action in *state* court without such evidence, they were nevertheless required to show that each class member was injured by the defendant's conduct—that is, relied upon the defendant's misrepresentations—in order to have Article III standing in *federal* court."); *Williams v. Purdue Pharma Co.*, 297 F. Supp. 2d 171, 177 (D.D.C. 2003) (finding plaintiffs

do not relate precisely to the issue.[10]  The one circuit court that has dealt with the price distortion theory has found it sufficient to confer standing.

In *Carriuolo*, the Eleventh Circuit affirmed the district court's grant of class certification under the Florida Deceptive and Unfair Trade Practices Act where the plaintiffs alleged that they had overpaid for cars based on the defendant's misrepresentations about the cars' safety through a sticker affixed to the cars.  823 F.3d at 986-87.  Even though many of the named plaintiffs had not relied on this misrepresentation, the Court nevertheless concluded that they had Article III standing.  The Court reasoned:

> As the district court recognized here, a manufacturer's misrepresentation may allow it to command a price premium and to overcharge customers systematically.  Even if an individual class member subjectively valued the vehicle equally with or without the accurate [safety label], she could have suffered a loss in negotiating leverage if a vehicle with perfect safety ratings is worth more on the open market.  As long as a reasonable customer will pay more for a vehicle with perfect safety ratings, the dealer can hold out for a higher price than he would otherwise accept for a vehicle with no safety ratings.  Thus, for example, a dealer would likely not discount a pickup truck with superior towing capacity for a customer with only a suburban commute, since most customers willingly pay more for that feature.  Nor would a dealer be likely to lower the price for a hearing impaired customer who demands to pay less for a vehicle equipped with satellite radio, even though she might value it equally to a vehicle equipped with no audio capabilities.  Obviously, prices are determined in substantial measure according to market demand.  Thus, because a vehicle with three perfect safety ratings may be able to attract greater market demand than a vehicle with no safety ratings, the misleading sticker arguably was the direct cause of actual damages for the certified class even if members individually value safety ratings differently.

---

lacked standing where complaint "assert[ed] that defendants engaged in false and misleading advertising, [but did] not plead that the[] [plaintiffs] were in any way deceived—or even saw—any of that advertising").

[10] *See, e.g.*, *Campbell ex rel. Equity Units Holders v. Am. Int'l Grp., Inc.*, 86 F. Supp. 3d 464, 469-470 (E.D. Va. 2015) (Brinkema, J.) (holding that a plaintiff did not have standing to sue but not discussing the validity for standing purposes of price distortion theory or benefit-of-the-bargain theory); *Estrada v. Johnson & Johnson*, No. 2:14-cv-01051-TLN-EFB, 2015 WL 1440466, at *3 (E.D. Cal. Mar. 27, 2015) ("'Overpaying for goods or purchasing goods a person otherwise would not have purchased based upon alleged misrepresentations by the manufacturer would satisfy the injury-in-fact and causation requirements for Article III standing.' . . . Article III standing may also be satisfied by allegations that a plaintiff would not have purchased the product had she known about the misbranding." (citation omitted)).

*Id.* at 987. In other words, "[a product] that the manufacturer knows to be safe is more valuable than a vehicle that the manufacturer perhaps anticipates will later be declared safe." *Id.*

Here, the evidence is sufficient for a fact finder to conclude that Lumber Liquidators knowingly misrepresented throughout a nationwide marketplace that its flooring was CARB compliant. Plaintiff's theory of injury is that these misrepresentations allowed LL to charge a higher price for its Product than the Plaintiffs would have otherwise had to pay. As other courts have found, if Plaintiffs can present facts and expert opinion to adequately support that claim, Plaintiffs have Article III standing for the purposes of their federal claims and for the Brandts' claims under the FDUTPA, regardless of whether any particular Plaintiff relied on the misrepresentation, though reliance remains an element or is otherwise material to many of Plaintiffs' specific causes of action.

## B.     Reliance

Many, but not all, of Plaintiffs' claims require that they actually relied on Lumber Liquidators' alleged misrepresentations or that they *would have* known about allegedly omitted information that LL was required to disclose, had Lumber Liquidators, in fact, disclosed it. Although the FAC alleges reliance in some fashion by each of the named Plaintiffs,[11] Defendant contends that Plaintiffs cannot recover under any claim that requires any form of reliance since "the evidence shows that no Plaintiff relied on the CARB-compliance label." Def.'s Mem. 1.

There are some variations in the definitions of reliance as between state and federal law and among the states themselves.[12] In any event, for the most part, the record is clear concerning

---

[11] *See generally* ¶¶ 69-80 (Lila and Laura Washington); ¶¶ 81-90 (Maria and Romualdo Ronquillo); ¶¶ 91-99 (Joseph Balero); ¶¶ 100-15 (Kristin and Ryan Brandt); ¶¶ 116-27 (Sarah and Devin Clouden); ¶¶ 128-36 (Kevin and Julie Parnella); ¶¶ 137-43 (Tanya and Shawn Burke).

[12] To the extent any state differences or rebuttable presumptions concerning reliance may affect the Court's ruling on the various claims that Plaintiffs allege, the Court will consider those differences within the context of specific claims, discussed *infra*.

whether the Plaintiffs actually relied on the alleged misrepresentations. In that regard, with the exception of the Brandts (FL),[13] none of the Plaintiffs saw or heard any statements concerning formaldehyde or CARB compliance on Defendant's product packaging, website, or anywhere else before he or she purchased it. *See generally* Def.'s Mem. ¶¶ 7-37. Many Plaintiffs did not know what CARB or the ATCM were, either at the time of purchase or when deposed. Some, such as Plaintiffs Lila Washington (CA), the Ronquillos (CA), Joseph Balero (CA), and the Parnellas (TX), have never claimed they relied on any of Lumber Liquidators' representations. Some have testified explicitly that they did *not* rely on any representations concerning formaldehyde or CARB compliance at the times of their purchases. *See id.* ¶¶ 27-28, 35 (pertaining to at least one of the Cloudens (NY) and Burkes (IL)); Dep. Tr. for Pl. Sarah Cloud at 81:10-13; Dep. Tr. for Pl. Devin Cloud at 128:9-12; Dep. Tr. for Pl. Shawn Burke at 151:7-16, 290:7-14. All Plaintiffs also agreed that their floors have functioned successfully as floors, and none claims that he or she was made ill as a result of the Products or suffered any form of medical injury.

As to the Brandts, there is substantial evidence that they also did not actually rely on the alleged misrepresentations. Kristin Brandt did not see the CARB label on the box before purchasing the flooring and did not research the flooring's CARB compliance. She did not know what CARB meant when she bought the flooring and only heard about it when she watched *60 Minutes*. She had not heard of the ATCM at the time of her deposition and does not try to purchase products that comply with California standards. On their plaintiff fact sheets, the

---

[13] The Brandts' fact sheets, which they swore to under penalty of perjury, made no mention of formaldehyde, safety, or state-law compliance being seen or discussed in any manner. Def.'s Mem. ¶ 23. When deposed, however, each of the Brandts contradicted his or her previous responses and indicated that product safety did factor into the decision to purchase Lumber Liquidators' flooring and that they were pleased to know that Defendant's product complied with safe formaldehyde levels. *Id.* ¶ 24.

Brandts made no reference to being aware in any way of formaldehyde, safety, or state-law compliance. Likewise, Ryan Brandt knew nothing about CARB at the time of his purchase and only learned about CARB and the ATCM when he became involved in this litigation. He did not remember seeing any Lumber Liquidators advertisements and as a matter of practice or routine, did not research whether products comply with regulatory standards before he buys them and did not do so with regards to his flooring purchase, even though he knew that flooring generally contains formaldehyde.

On the other hand, when deposed, Kristin Brandt said that she researched product safety before purchasing her flooring because she was pregnant at the time and was preparing a nursery for their child and, during that search, saw something on Lumber Liquidators' website that satisfied her that the Products complied with California safety laws. Ryan Brandt testified that a Lumber Liquidators sales associate told them the flooring complied with all state laws and was safe before they purchased it. Because there is some evidence that the Brandts relied on the alleged misrepresentation, there exists a genuine issue of material fact in that regard, which is centrally bound up with credibility determinations for the fact finder.

For the above reasons, the evidence is insufficient as a matter of law to establish that any Plaintiff except the Brandts (FL) actually relied on the alleged misrepresentations.

### C.       Materiality

Some of Plaintiffs' claims require them to demonstrate that the misrepresentations or omissions they allege Lumber Liquidators made were material. In that regard, Defendant claims that its alleged nondisclosure was not material as to any Plaintiff and that CARB non-compliance could not possibly be material to any consumer outside of California. Def.'s Mem. 20.

Last term, the United States Supreme Court clarified that the "materiality requirement descends from 'common law antecedents.'" *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2002 (2016) (quoting *Kungys v. United States*, 485 U.S. 759, 769 (1988)).  The Court explained:

> Under any understanding of the concept, materiality "look[s] to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation."  26 R. Lord, Williston on Contracts § 69:12, p. 549 (4th ed. 2003) (Williston).  In tort law, . . . a "matter is material" in only two circumstances: (1) "[if] a reasonable man would attach importance to [it] in determining his choice of action in the transaction"; or (2) if the defendant knew or had reason to know that the recipient of the representation attaches importance to the specific matter "in determining his choice of action," even though a reasonable person would not.  Restatement (Second) of Torts § 538, at 80.

*Universal Health Servs., Inc.*, 136 S. Ct. at 2002-03.  In elaborating on "materiality," the Court cited with approval a treatise that appears to incorporate into materiality essentially a "but for" element[14] and a state court decision that viewed materiality in terms of whether a misrepresentation "went to the very essence of the bargain."[15]  Whether a reasonable consumer would find information to be material is often viewed as a question of fact, reserved for the trier of fact, and the omitted information need not be the sole or even decisive reason for the transaction.  *See In re Tobacco II Cases*, 207 P.3d 20, 39-40 (Cal. 2009).  *But see United States ex rel. Berge v. Board of Trustees of the Univ. of Ala.*, 104 F.3d 1453, 1460 (4th Cir. 1997) (finding that, "in the context of the civil False Claims Act the determination of materiality, although partaking of the character of a mixed question of fact and law, is one for the court").

Plaintiffs claim that "the true content of formaldehyde" constitutes material information because it "directly impact[s] the safety of the flooring products. . . . Whether composite flooring

---

[14] *See Universal Health Servs., Inc.*, 136 S. Ct. at 2003 n.5 ("[A] misrepresentation is material if, had it not been made, the party complaining of fraud would not have taken the action alleged to have been induced by the misrepresentation." (quoting Williston § 69:12 at 550)).

[15] *Universal Health Servs., Inc.*, 136 S. Ct. at 2003 n.5 (quoting *Junius Constr. Co. v. Cohen*, 178 N.E. 672, 674 (N.Y. 1931) (internal quotation marks omitted)).

was manufactured with levels of formaldehyde that can pose significant health risks is a material safety concern." FAC ¶ 159. On the one hand, Plaintiffs argue that because Defendant so prominently advertised its compliance with CARB's standards—even outside of California— Defendant surely believed it to be a material consideration for consumers. Plaintiffs point to Defendant's decision to destroy its entire supply of Products because of reports of excessive formaldehyde emissions as further confirmation of materiality. In response, Defendant contends that "[i]f people who ultimately chose to sue based on CARB compliance were unconcerned with CARB compliance when they shopped for flooring, then ordinary citizens (especially outside of California) do not commonly consider such information important to their purchasing decisions." Def.'s Mem. 22.

While certainly related, "materiality" and "reliance" are separate concepts.[16] Even though a Plaintiff may not have actually relied on Defendant's misrepresentation, he or she may still have attached significance to the formaldehyde levels in the Products and, in fact, Plaintiffs' depositions indicate that most of them did. In that regard, Lumber Liquidators specifically advertised that its Products complied with CARB, and its CEO repeated this safety assurance in a letter posted prominently on the company's website following the *60 Minutes* special. The CARB label itself serves as an indication in every place where the Products were marketed that they contained no more than a set amount of formaldehyde. That Lumber Liquidators itself recognized that consumers would likely be influenced by assurances concerning the levels of formaldehyde is reflected in its explicit disclosure on the label that its solid hardwood products (as opposed to its laminates like those at issue in this litigation) contained "NO formaldehyde."

---

[16] The Court recognizes in this regard that the factual basis for any required demonstration of "reasonable reliance" or "inferred reliance" and materiality are often indistinguishable. *See also* note 24, *infra*.

For all of these reasons, Plaintiffs have therefore presented sufficient evidence to satisfy any materiality requirement within Plaintiffs' claims.

> ### D. Whether Lumber Liquidators' Products Exceeded ATCM Formaldehyde Limits

Lumber Liquidators claims that there is insufficient evidence to establish that the Products exceeded ATCM formaldehyde emissions limits because (1) only CARB can determine if a product violates the ATCM, and it has not done so with respect to most of the Plaintiffs' Products; and (2) even if ATCM non-compliance can be established through privately retained third party testing, Plaintiffs have failed to sufficiently demonstrate through reliable testing that Plaintiffs' Products exceeded allowable levels of emissions under the ATCM.

> #### 1. Whether CARB Has the Exclusive Ability to Determine an ATCM Violation

Throughout this litigation, Defendant has claimed that only CARB—not third party certifiers and not a jury—can determine whether Lumber Liquidators' Products contained formaldehyde emissions in excess of those permitted under the ATCM. Defendant contends in that regard that because CARB utilizes an undisclosed "uncertainty factor" in assessing whether emissions levels exceed permissible ATCM limits, no one other than CARB can determine whether those limits have been exceeded. Based on these premises, Defendant argues that since there is no evidence that CARB ever tested the specific wood products in most of the Plaintiffs' homes and that, in the two homes where it did (the Cloudens' and the Ronquillos'), CARB never declared an ATCM violation, Plaintiffs have failed to establish a genuine issue of material fact as to whether the Plaintiffs' *particular* products violated the ATCM. Def.'s Mem. 12-13.

The Court concludes that a Plaintiff is not required to establish excessive formaldehyde emissions either through CARB-conducted testing or a CARB-declared violation. First, there is nothing in the ATCM that confers on CARB the exclusive ability to determine whether a product

emits excessive formaldehyde, although only CARB can declare a violation of the ATCM for the purposes of administrative sanctions. *See* Cal. Health & Safety Code § 43024 (2010). Rather, as the Court explained in Pretrial Order No. 8, under ATCM Section 93120.2(a)(4), a product "does not comply" with applicable emission standards if "[a] finished good contains any composite wood product which does not comply with the applicable emission standards in Table 1, based on the criteria set forth in . . . [ATCM Section 93120.2(a)(3)]." ATCM Section 93120.2(a)(3), in turn, states that an emissions violation occurs if "[a] composite wood product produced by a manufacturer is tested at any time after it is manufactured, using <u>either</u> the compliance test method specified in section 93120.9(a) <u>or</u> the enforcement test method specified in section 93120.9(b), and is found to exceed the applicable emissions standard specified in Table 1 . . . ." (Emphasis added). Even if a marginal level of formaldehyde emissions above the published limits were necessary to establish an ATCM violation of CARB limits in order to account for testing inaccuracies, as CARB apparently requires through its use of the undisclosed "uncertainty factor," Defendant implicitly concedes that levels substantially in excess of the ATCM limits would exceed any necessary "uncertainty factor," as evidenced by its resolution of the investigation by the CPSC even though the CPSC's findings were based on CDC studies – not on CARB testing results. In sum, none of Plaintiffs' various causes of action requires that CARB itself test the Products or officially declare an ATCM violation;[17] and Plaintiffs' testing

---

[17] Even were CARB testing required to some degree, the evidence in this record, viewed most favorably to the Plaintiffs, is sufficient to find that any such requirement is satisfied. At least in part, CARB testing played a role in causing Defendant to remove all of its Products from the market. In that regard, Defendant itself treated its Chinese-made laminate Products as a single grouping and did not distinguish between vendors or past CARB inspections when it removed the Products from the market in May 2015. Similarly, Lumber Liquidators' resolution with the CPSC included a promise to never sell *any* of its Products again – not just Products from particular suppliers. Finally, in support of its Motion, Defendant has not produced any evidence of a material difference as to formaldehyde level in the Products based on suppliers.

evidence, if admissible, is therefore probative of whether, as a matter of *fact*, Lumber

Liquidators' Products contained more formaldehyde than Defendant publicly represented.[18]

### 2. Whether Plaintiffs Have Qualifying Evidence of an ATCM Violation

Lumber Liquidators contends that even if a violation of ATCM Section 93120.2(a) can be

demonstrated through third party testing, Plaintiffs have failed to present evidence of excessive

emissions levels through an appropriate and reliable testing method. Plaintiffs claim that their

testing, as well as testing conducted by CARB and Defendant itself, establishes that their

personal flooring had formaldehyde emission levels in excess of those allowed under the ATCM.

Plaintiffs contend that Defendant also violated its obligation under ATCM Section 93120.8(b) to

"take reasonable prudent precautions to ensure that the composite wood products and composite

wood products contained in finished goods . . . comply with the emission standards specified in

section 93120.2(a)."

For the purposes of establishing that the Products' emission levels exceeded ATCM

limits, Plaintiffs have used the ASTM D6007 compliance test method, referenced in ATCM

Section 93120.9(a), with test samples prepared in accordance with CARB's Standard Operating

Procedure for Finished Good Test Specimen Preparation Prior to Analysis of Formaldehyde

Emissions from Composite Wood Products (the "CARB SOP"). The CARB SOP deals with

how an MDF core sample should be extracted for testing from a finished product. For that

reason, it has been referred to as "deconstructive testing," even though its only purpose is to

obtain a sample core for testing.

---

[18] Defendant filed a Motion to Exclude Expert Reports and Testimony of Francis J. Offermann, Steven A. Verhey, and David E. Jacobs as Related to Deconstructive Testing [Doc. No. 1005], and Plaintiff filed Rule 72 objections [Doc. No. 1016] to the Court's order issued by Magistrate Judge Thomas Rawles Jones, Jr. granting Defendant's motion to strike certain portions of Steven A. Verhey's expert report and for Rule 37 sanctions [Doc. No. 1015]. The Court denied Defendant's motion [Doc. No. 1093] and sustained in part and overruled in part Plaintiffs' Rule 72 Objections [Doc. No. 1092].

Defendant attacks Plaintiffs' testing on two grounds: (1) that the CARB SOP applies only to the preparation of the samples to be tested by CARB according to the enforcement test method for finished goods set forth in ATCM Section 93120.9(c) and not to the compliance test method under ATCM Section 93120.9(a); and (2) that the CARB SOP does not produce a sample core that can accurately or reliably measure formaldehyde emission levels as they existed when the core was incorporated into the finished product, the critical point in time for the purpose of measuring ATCM compliance.

Under ATCM Section 93120.9(a), authorizing the compliance test method, "[c]ompliance with the emission standards for . . . MDF in section 93120.2(a) . . . shall be demonstrated by conducting product emissions tests, *verified by third party certification as specified in section 93120.4*." (Emphasis added). ATCM Section 93120.1(41) defines a "third party certifier" as "an organization or entity approved by the [ARB] Executive Officer that: (A) verifies the accuracy of the emission test procedures and facilities used by manufacturers to conduct formaldehyde emission tests, (B) monitors manufacturer quality assurance programs, and (C) provides independent audits and inspections." ATCM Section 93120.4, titled "Third Party Certifiers," (1) provides that "[a]ll third party certifiers must be approved in writing by the ARB," ATCM § 93120.4(a)); (2) sets forth the approval process for third party certifiers, *id.* § 93120.4(b); and (3) references the requirements for third party certifiers set forth in Section 93120.12, Appendix 3, *id.* § 93120.4(c). Section 93120.12, Appendix 3, in turn, requires, *inter alia*, that a third party certifier "[u]se laboratories and primary or secondary methods for conducting testing that are certified by an accreditation body that is a signatory to the International Laboratory Accreditation Cooperation Mutual Recognition Arrangement (ILAC, 2000)" and that the "formaldehyde test methods used by the laboratory shall appear in its scope of accreditation."

*Id.* § 93120.12, App. 3(b)(F). ATCM Section 93120.9(a), authorizing the compliance test method used by Plaintiffs, does not otherwise impose any specific testing requirements or methods, and neither the compliance test method specified under ATCM Section 93120.9(a) nor the CARB SOP, by its terms, appears to prohibit the use of an MDF core sample in accordance with the CARB SOP. Rather, the compliance test method in effect delegates to third party certifiers the ability to determine compliance with ATCM emission standards based on recognized testing methods that appear in its accreditation.[19] For these reasons, the Court rejects Defendant's contention that formaldehyde emission levels may not be determined through the compliance method using an MDF core sample obtained from a finished product in accordance with the CARB SOP. As reflected in the Court's ruling on Defendant's motion to exclude Plaintiffs' expert testimony, the Court also rejects the argument that use of the CARB SOP interjects into the compliance test method a level of unreliability that precludes the admissibility of those test results under the *Daubert* analysis. [Doc. No. 1093.]

Based on the above rulings, Plaintiffs' testing evidence is sufficient for a fact finder to reasonably conclude that each of the Products Plaintiffs purchased contained a level of formaldehyde above the permitted limits prescribed by CARB and the ATCM. Each Plaintiff had his or her own flooring tested by various third party certifiers, both before and during discovery, and each Plaintiff's flooring exceeded the 0.11 ppm limit established by the ATCM, including some that were 300% of that limit, such as the Burkes (IL). Pls.' Mem. Opp'n 25. Moreover, the laboratory that Defendant itself hired, Benchmark International, found that some of LL's Products exceeded CARB standards[20] and also failed CARB's testing in October 2013, including testing on some of the same laminates as those sold to the Plaintiffs. Additionally, as

---

[19] Defendant has not challenged Plaintiffs' testing on the grounds that the third party certifiers' accreditation was insufficient for the purposes of using the CARB SOP in connection with the compliance test method.
[20] *See* Pls.' Mem. Opp'n, Ex. 44 at 7-8.

stated in CARB's announcement in March 2016, CARB determined that "ARB testing showed [Lumber Liquidators' Products] exceeded state formaldehyde limits."

There is also evidence sufficient to establish that Defendant failed to comply with its obligation under the ATCM to "take reasonable prudent precautions to ensure that the composite wood products and composite wood products contained in finished goods that [it] purchase[s] comply with the emission standard specified in section 93120.2(a)," ATCM § 93120.8(b), thereby establishing a separate basis for an ATCM violation. Again, in its March 2016 announcement, CARB made a finding that "Lumber Liquidators failed to take reasonable prudent precautions," and Plaintiffs have provided other evidence sufficient for a fact finder to reasonably reach that conclusion. That evidence includes Lumber Liquidators' failure to properly instruct and supervise its Chinese suppliers concerning formaldehyde levels and to terminate its relationship with vendors who Defendant had reason to believe were involved in supplying products that misrepresented their formaldehyde content.

For the above reasons, the Court concludes that there exists a genuine issue of material fact as to whether Lumber Liquidators sold Chinese-manufactured composite wood flooring that did not comply with the ATCM.

## IV.    ANALYSIS OF SPECIFIC CLAIMS

Applying the above rulings to the various counts of the FAC, the Court concludes as follows:

### A.    Plaintiff Laura Washington's Standing

Plaintiff Laura Washington concedes that she lacks standing. *See* Hr'g Tr. 39:11-14. Defendant's motion as to Plaintiff Laura Washington is therefore GRANTED as to all claims involving Laura Washington, and those claims are DISMISSED.

**B.     Alleged Breach of Implied Warranty (Count IX) (Asserted by All Plaintiffs)**

As this Court previously stated, "[a]n 'implied warranty' means 'an implied warranty arising under state law . . . in connection with the sale by a supplier of a consumer product.'" Pretrial Order No. 8 at 20 (citing 15 U.S.C. § 2301(7)).  The specific prima facie showing necessary for an implied warranty claim varies among states.  *See* Cal. Civ. Code § 1790 *et seq.*; Fla. Stat. § 672.314; 810 Ill. Comp. Stat. 5/2-314; N.Y. U.C.C. Law § 2-314; Tex. Bus. & Com. Code § 2.314.  However, the required substantive showing is essentially the same, and the parties all rely on the Uniform Commercial Code.  Of particular relevance are the requirements that, to be merchantable, goods "must be at least such as . . . pass without objection in the trade under the contract description; and . . . are fit for the ordinary purposes for which such goods are used; and . . . conform to the promises or affirmations of fact made on the container or label if any." U.C.C. §§ 2-314(2)(a), (c), (f).

Defendant argues that all of its flooring functioned as flooring and that all Plaintiffs agreed in that regard in their depositions.  Def.'s Mem. 25.  No Plaintiff claims personal injury damages, and Defendant contends that "Plaintiffs have no evidence of unsafety to such a degree that all states at issue would penalize its sale."  *Id.*  As to the issue of container labeling, LL claims that Plaintiffs have abandoned their written warranty claim and that in any event, "[t]he logic by which courts have excluded product descriptions from the . . . definition of a written warranty applies with equal force [to an implied warranty]."  Def.'s Reply 17.

Under a breach of implied warranty claim, the central issue is whether a product is, in fact, as it is represented to be on its packaging and whether it conforms to any promises made by that packaging.  The issue is not whether there is "evidence of unsafety to such a degree that all states at issue would penalize its sale," as Lumber Liquidators has suggested.  Def.'s Mem. 25.

Plaintiffs contend that the Products' label at the point of sale in every state made the demonstrably false claim that the Products were CARB compliant. Pls.' Mem. Opp'n 29. However, Plaintiffs have not presented any other evidence to support the claim that the Products could not "pass without objection in the trade under the contract description" or were "unfit for ordinary use," as they have alleged. *See* FAC ¶ 243. Whether or not Plaintiffs' claim for breach of implied warranty survives Defendant's Motion for Summary Judgment therefore depends on whether LL's Product "conform[ed] to the promises or affirmations of fact made on the container or label."

The Court has already determined that there is sufficient evidence to support the claim that Defendant's Products were not CARB compliant because they failed to comply with the ATCM. Although the ATCM applies only to products sold in California, Lumber Liquidators represented in all states that the Products complied with the ATCM, and the existence *vel non* of an implied warranty may properly be based on that representation. The Court also concludes that the Defendant is not entitled to summary judgment on this claim based on its other grounds.

First, contrary to Defendant's contention, product labeling such as that used by Lumber Liquidators is not excluded from the applicable U.C.C. definition of "implied warranty." *See*, *e.g.*, *Native Am. Arts, Inc. v. Bundy-Howard, Inc.*, 2002 WL 1488861, at *2 (N.D. Ill. July 11, 2002) (permitting breach of implied warranty claim against sellers based on label suggesting products were made by Native Americans and finding that fitness of product for ordinary use was irrelevant).[21] Furthermore, because express warranty and implied warranty claims are

_____

[21] The Court's conclusion in this regard is further supported by the following U.C.C. comment on an implied warranty:

> [W]herever there is a label or container on which representations are made, even though the original contract, either by express terms or usage of trade, may not have required either the labelling or the representation. This follows from the general obligation of good faith which requires that a buyer should not be placed in the position of reselling or using goods delivered under false representations appearing on the package or container.

distinct, Plaintiffs' abandonment of their written warranty claims does not foreclose their implied warranty claims.

Finally, Defendant asserts a disclaimer defense to the implied warranty claims. It argues that "like all plaintiffs, Lila Washington's invoice included a warranty disclaimer,"[22] which states as follows: "All other warranties are disclaimed, except to the extent such warranties cannot be validly disclaimed under applicable law." Def.'s Mem. 5; *id.* Ex. 6. But, as Plaintiffs correctly contend, this language cannot disclaim the implied warranty of merchantability because the language fails to specifically mention the implied warranty of merchantability by name, which is required under the U.C.C. *See* U.C.C. § 2-316(2) ("[T]o exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability. . . .").[23] Thus, as a matter of law, Lumber Liquidators cannot validly disclaim the implied warranty of merchantability in the manner in which it attempted to do so as to Plaintiff Lila Washington. Furthermore, because Defendant has not presented any evidence as to any of the other Plaintiffs' warranties contained on their invoices, there remains a genuine issue of material fact concerning whether any warranty disclosure that accompanied the other sales validly disclaimed the implied warranty of merchantability.

For the above reasons, Plaintiffs have presented facts sufficient for a jury to reasonably find that Defendant's Products did not conform to promises on their labeling, and the record is insufficient to conclude as a matter of law that Defendant is entitled to judgment based on its disclaimer defense. Defendant's Motion is therefore DENIED as to Plaintiffs' claims for breach of implied warranty (Count IX).

---

U.C.C. § 2-314, cmt. 10.
[22] The summary judgment warranty record contains only the disclaimer that accompanied the sale of Products to Plaintiff Lila Washington.
[23] All of the relevant states also follow this rule.

**C.     Alleged Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*. ("MMWA") (Count X) (Asserted by All Plaintiffs)**

The MMWA provides a federal cause of action for state law express and implied warranty claims.  *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 291-92 (4th Cir. 1989).  Specifically, a consumer may bring suit if he or she is "damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract."  15 U.S.C. § 2310(d)(1).

An "implied warranty" under the MMWA means "an implied warranty arising under State law . . . in connection with the sale by a supplier of a consumer product."  15 U.S.C. § 2301(7).  Plaintiffs do not base their MMWA claim on a breach of a written warranty.  *See* Pls.' Mem. Opp'n 28 ("Plaintiffs are not advancing a claim premised upon a written warranty for the reasons noted by Defendant.").  The only issue that remains is whether there is evidence sufficient to sustain claims for breach of an implied warranty.  MMWA claims are "subject to the same pleading requirements and defenses as . . . state law warranty claims," *Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 624 (M.D.N.C. 2005).  Therefore, the requirements for Plaintiffs' claim under Count X parallel those for Count IX pertaining to implied warranty claims within the Plaintiffs' states and include the elements of notice, reliance, breach, and damages (and, hence, the viability of Plaintiffs' price distortion theory of damages).  *MacKenzie v. Chrysler Corp.*, 607 F.2d 1162, 1166 (5th Cir. 1979).  The Court therefore DENIES Defendant's Motion as it relates to Plaintiffs' MMWA claim (Count X) for the same reasons set forth above as to Plaintiffs' implied warranty claims in Count IX.

**D.**     **Alleged Violations of the California Consumer Protection Statutes (Counts II, III, and IV) (Asserted by California Plaintiffs Lila Washington, Ronquillo, and Balero)**

California Plaintiffs Lila Washington, Ronquillo, and Balero allege that Defendant violated three different California consumer protection statutes: the Unlawful, Unfair, or Fraudulent Business Practices Law ("UCL") (Count II), the False Advertising Law ("FAL") (Count III), and the Consumer Legal Remedies Act ("CLRA") (Count IV).  *See* FAC ¶¶ 165-93.

**1.**     **FAL Claim (Count III)**

The California False Advertising Law makes unlawful any "unfair, deceptive, untrue, or misleading advertising."  Cal. Bus. & Prof. Code § 17500.  It prohibits "advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public."  *Kasky v. Nike, Inc.*, 45 P.3d 243, 250 (Cal. 2002) (alteration in original) (citation omitted) (internal quotation marks omitted).  In order to prove a violation of the FAL, a plaintiff must show that the "statement[] . . . [is] untrue or misleading" and that the defendant "knew, or by the exercise of reasonable care should have known, that the statements were [un]true or misleading."  *People ex rel. Mosk v. Lynam*, 253 Cal. App. 2d 959, 965 (Cal. Ct. App. 1967).  As discussed above, these Plaintiffs here have presented evidence sufficient to establish these two elements.

A plaintiff bringing suit under the FAL must also prove reliance.  *True v. Am. Honda Motor Co., Inc.*, 520 F. Supp. 2d 1175, 1182 (C.D. Cal. 2007) ("[M]ost courts that have confronted this issue . . . have concluded that [California law] impose[s] a requirement that a UCL/FAL plaintiff actually was exposed to and relied on the misleading advertisements.").  However, courts have also held that "FAL plaintiffs may avail themselves of the inferred reliance principle where the misrepresentation is 'material.'"  *Id.* (citation omitted).  Therefore,

under the inferred reliance principle, if a misrepresentation is material, "a plaintiff satisfies the reliance element with an allegation that a false or deceptive advertisement 'induced the plaintiff to alter his position to his detriment.'"[24] *True*, 520 F. Supp. 2d at 1183 (citing *Caro v. Procter & Gamble Co.*, 22 Cal. Rptr. 2d 419 (Cal. Ct. App. 4th 1993)). Other federal courts have adopted this position as well. *See, e.g.*, *In re Milo's Dog Treats Consol. Cases*, 9 F. Supp. 3d 523, 534 (W.D. Pa. 2014) (stating that with regard to a claim under, *inter alia*, the California FAL, "[a] misrepresentation of fact is material if it induced the plaintiff to alter his position to his detriment. Stated in terms of reliance, materiality means that without the misrepresentation, the plaintiff would not have acted as he did.").

Based on the summary judgment record before the Court, and as Plaintiffs' counsel effectively conceded during the hearing the Court held on September 13, 2016, *see* Hr'g Tr. 39:18-19, the evidence is insufficient as a matter of law for a reasonable fact finder to conclude that any of the California Plaintiffs altered his or her position in any way due to the misrepresentations that Defendant allegedly made. Any presumption of reliance that may arise from the materiality of the alleged misrepresentation, *see* Section III(C), *supra*, is refuted by the record. Accordingly, Defendant's Motion is GRANTED as to Count III.

### 2.      UCL Claim (Count II)

As the Court has already explained in Pretrial Order No. 8,

> [t]he California UCL prohibits "unlawful, unfair or fraudulent business act[s] or practice[s] and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. It requires that a plaintiff's economic injury come 'as a result of' the allegedly unfair competition. *Id.* § 17204. California courts have concluded that <u>the UCL imposes an "actual reliance" requirement</u> on private citizens prosecuting a claim under the "unfair" and "fraud" prongs of the UCL,

---

[24] The Court recognizes that California courts have relied on the definition of materiality in determining whether a plaintiff was induced to alter his or her position and to that extent have conflated reliance and materiality. Nevertheless, the record in this case clearly demonstrates that the California Plaintiffs did not rely on any alleged misrepresentation, irrespective of the materiality of that misrepresentation.

and also under the 'unlawful' prong to the extent that the substance of the unlawful conduct is a misrepresentation claim. *Hale v. Sharp Healthcare*, [108 Cal. Rptr. 3d 669, 678-79 (Cal. Ct. App. 2010)] (citing *In re Tobacco II Cases*, [207 P.3d 20, 39 (Cal. 2009)].

Pretrial Order No. 8 at 13-14 (emphasis added).

Consistent with this Court's prior order, Defendant concedes that "a presumption of reliance arises where a claim rests on a material misrepresentation" but claims that it has successfully rebutted this presumption given the California Plaintiffs' admission that they did not rely on Lumber Liquidators' alleged misrepresentations. Def.'s Mem. 14-15. Plaintiffs contend that their testimony was equivocal concerning their lack of reliance and that a jury should determine whether Plaintiffs would not have purchased Defendant's Products, had Defendant disclosed the truth about the amount of formaldehyde the Products contained. Pls.' Mem. Opp'n 20-21. *See Khoday v. Symantec Corp.*, 93 F. Supp. 3d 1067, 1088-1090 (rejecting summary judgment on UCL and CLRA claims, finding the plaintiff's equivocal answers on whether the defendant's conduct impacted her purchase decision "best determined by a jury").[25]

Defendant Lila Washington never claimed that she relied on any representations made by Lumber Liquidators concerning formaldehyde content or CARB compliance. Nor does she specifically claim that she would not have bought the product had she known the truth. Rather, she claims that she relied generally on Lumber Liquidators to comply with the laws of the State of California. No California court appears to have ever recognized as adequate this form of

---

[25] As this Court previously observed, "[a] California federal court has recently concluded in an unreported opinion that 'a plaintiff need not demonstrate individualized reliance on specific misrepresentations to satisfy the reliance requirement.'" *Id.* at 14 (quoting *Gold v. Lumber Liquidators, Inc.*, No. 14-CV-05373-TEH, 2015 WL 7888906, at *8 (N.D. Cal. Nov. 30, 2015)). Thus, "the UCL has arguably created a 'conclusive presumption that when a defendant puts out tainted bait and a person sees it and bites, the defendant has caused an injury. . . .'" *Id.* at 14-15 (quoting *Gold*, 2015 WL 7888906, at *9). Furthermore, for a private individual to prosecute a claim under the UCL, that individual must show that he or she "has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. For purposes of analyzing Defendant's Motion on the UCL count, the Court will assume, without deciding, that Plaintiffs have suffered an injury in fact as is required under the UCL.

reliance, and the Court concludes that she has failed to present facts sufficient for a reasonable fact finder to find that she relied on any alleged misrepresentations, as required for the purposes of establishing liability under the "unfair" and "fraud" prongs of the UCL. The Court has also already concluded that California Plaintiffs Ronquillo and Balero have not demonstrated actual reliance. Therefore, all California Plaintiffs have failed to make a claim under those prongs.

However, as the Court previously stated, the "unlawful" prong is to be considered "separate and apart from any alleged misrepresentations" Defendant may have made, Pretrial Order No. 8 at 16; and no form of reliance is required to state a claim under the "unlawful" prong of the UCL when the underlying violation on which the alleged UCL violation is predicated does not require reliance. Furthermore, under California law, "'[v]irtually any law or regulation— federal or state, statutory or common law—can serve as [a] predicate for a [UCL] "unlawful" violation.' . . . Thus, examples of UCL claims properly alleging "unlawful" conduct, while not boundless, are seemingly so.'" *Paulus v. Bob Lynch Ford, Inc.*, 43 Cal. Rptr. 3d 148, 165 (Cal. Ct. App. 2006) (citation omitted). The Supreme Court of California has explained that "[b]y proscribing 'any unlawful' business practice, 'section 17200 "borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 539-40 (Cal. 1999) (quoting *State Farm Fire & Casualty Co. v. Superior Court*, 45 Cal. Rptr. 2d 229, 234 (Cal. Ct. App. 1996). The Supreme Court of California has similarly clarified that, "whether a private right of action should be implied under this statute . . . is immaterial since any unlawful business practice . . . may be redressed by a private action charging unfair competition in

violation of Business and Professions Code sections 17200 and 17203." *Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 673 P.2d 660, 668 (Cal. 1983) (in bank).[26]

The sole issue for this Court to determine under the "unlawful" prong of the UCL is therefore whether there is sufficient evidence to establish that Lumber Liquidators violated "any law or regulation," *Paulus*, 43 Cal. Rptr. 3d at 165, which would, in turn, serve as a predicate for a UCL "unlawful" violation. The Court has already determined that, viewed in a light most favorable to the Plaintiffs, the Plaintiffs have provided sufficient evidence to demonstrate that LL violated the ATCM. *See* Section III(D), *supra*. The ATCM violation therefore serves as the predicate violation for the UCL "unlawful" prong, and Defendant's Motion is DENIED as to Count II.

### 3. CLRA Claim (Count IV)

Similar to the UCL, California's CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices." Such practices include "[r]epresenting that goods are of a particular standard, quality, or grade . . . if they are of another." Cal. Civ. Code § 1770(a). The California Plaintiffs allege in the FAC that Lumber Liquidators represented that its Chinese-manufactured laminate flooring was compliant with the relevant CARB emission standards when it was not. FAC ¶¶ 183-93.

Only consumers who have suffered injury "as a result of" allegedly unlawful conduct may bring suit. *Id.* The California Supreme Court has determined that this requirement is the

---

[26] Until 2004, the UCL contained a provision that expressly conferred standing to sue upon "any person acting for the interests of . . . the general public" without requiring a showing of actual injury. That provision was in effect when this case was decided. Proposition 64, passed in 2004, provided that only those private persons "'who [have] suffered injury in fact and [have] lost money or property' (§§ 17204, 17535) may sue to enforce the unfair competition and false advertising laws. Uninjured persons may not sue (§§ 17204, 17535), and private persons may no longer sue on behalf of the general public (Prop. 64, § 1, subd. (f))." *Branick v. Downey Sav.& Loan Ass'n*, 138 P.3d 214, 240 (Cal. 2006). This Court has already determined above that the Plaintiffs in this litigation have presented evidence sufficient to establish injury-in-fact.

same as that under the UCL.[27] *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 887-88 (Cal. 2011). Therefore, for the same reasons as described above in the Court's discussion of reliance under the UCL claim (Count II), the Court GRANTS Defendant's Motion as to all of the California Plaintiffs with respect to Count IV.

      **E.**      **Alleged Violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq.* (Count V) (Asserted by Florida Plaintiffs Brandt)**

The FDUTPA prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). The statute does not define the elements of an action but, instead, requires that Florida courts give "due consideration and great weight" to Federal Trade Commission and federal court interpretations of section 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1). *See* Fla. Stat. § 501.204(2). Florida courts have, in turn, interpreted the DUTPA to mean that "a deceptive practice is one that is 'likely to mislead' consumers." *Davis v. Powertel, Inc.*, 776 So.2d 971, 974 (Fla. Dist. Ct. App. 2000) (citation omitted). "The plaintiff need not prove the elements of fraud to sustain an action under the statute," and "the question is not whether the plaintiff actually relied on the alleged deceptive trade practice, but whether the practice was likely to deceive a consumer acting reasonably in the same circumstances." *Id.* Furthermore, a price distortion theory of damages is cognizable under the DUTPA. "[T]he FDUTPA 'benefit of the bargain' model provides a standardized class-wide damages figure because the plaintiff's out-of-pocket payment is immaterial." *Carriulolo*, 823 F.3d at 986; *see also Collins v. DaimlerChrysler Corp.*, 894 So.2d 988, 991 (Fla. Dist. Ct. App. 2004) ("This case turns on a relatively simple question, at least as to damages-Is a car with

---

[27] Plaintiffs claim that actual reliance is not essential for a successful CLRA claim. Pls.' Mem. Opp'n 16. As with a UCL claim, actual reliance is not required only to the extent that the claim is based on an omission and not on a misrepresentation.

defective seatbelt buckles worth less than a car with operational seatbelt buckles? Common sense indicates that it is . . . .").

Here, the record is sufficient for a reasonable fact finder to find that Defendant made misrepresentations concerning the formaldehyde content of the Products and, specifically, the Products' compliance with CARB and that these misrepresentations constituted a deceptive marketing practice likely to deceive a customer acting reasonably when buying flooring. Plaintiffs have also sufficiently demonstrated that the Brandts suffered an injury as a result of that deceptive marketing practice. Defendant's Motion is therefore DENIED as to the claim of the Brandts under Count V.

**F.    Alleged Violations of N.Y. Gen. Bus. Law § 349, *et seq.* (Count VI) (Asserted by New York Plaintiffs Clouden)**

New York General Business Law Section 349(a) ("Section 349") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." "[A]ny person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions." *Id.* § 349(h). Additionally, courts may award treble damages up to $1,000 and/or attorney's fees. *Id.* Like the Florida DUPTA, Section 349 does not specify any particular elements. Nevertheless, New York courts have required a plaintiff to show "first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Stutman v. Chem. Bank*, 731 N.E.2d 608, 611 (N.Y. 2000). Reliance is not required. *Id.* at 612 ("[A]s we have repeatedly stated, reliance is not an element of a section 349 claim."). Section 349 also allows for the price distortion theory of damages that Plaintiffs advance in this litigation. *See, e.g.*, *Ebin v. Kangadis Food Inc.*, 297

F.R.D. 561, 568-69 (S.D.N.Y. 2014) (finding damages were satisfied by "the injury incurred from buying an overpriced product alleging to be olive oil, which was actually pomace oil"). Here, for the reasons described above, the first and second elements are clearly met.

A closer question is whether or not Plaintiffs were actually injured. New York courts have permitted recovery for Section 349 claims under Plaintiffs' price distortion theory so long as a plaintiff proves "actual" injury, though not necessarily pecuniary harm. *Id.* at 569. In analyzing whether a consumer suffered an "actual injury" for the purposes of Section 349, the Court of Appeals of New York rejected the argument that "consumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices, have suffered an injury under General Business Law § 349." *Small v. Lorillard Tobacco Co., Inc.*, 720 N.Y.S.2d 615, 620-21 (N.Y. 1999). Nevertheless, the court recognized in dicta that it "m[ight] be right that a plaintiff might have a claim for the higher price the consumer paid for the product as a result of the misrepresentation in that circumstance [where the cost of the product was affected by the alleged misrepresentation]." *Id.* n.5. Based on the current state of New York law and considering the facts in a light most favorable to the Plaintiffs, the Court finds that the Cloudens have demonstrated a genuine issue of material fact as to whether they suffered injury under New York law, and Defendant's Motion on Count VI is therefore DENIED.

G.    **Alleged Violations of the Texas Deceptive Trade Practices Act ("DTPA"), Tex. Bus. & Com. Code § 17.50, *et seq.* (Count VII) (Asserted by Texas Plaintiffs Parnella)**

Plaintiffs Parnella bring suit under section 17.50(a)(2), which provides a cause of action where a consumer suffers "economic damages or damages for mental anguish" produced by "breach of an express or implied warranty." Tex. Bus. & Com. Code § 17.50(a)(2). DTPA

section 17.50 does not create any warranty but rather provides a cause of action for breaches of warranty arising under statutory or common law.

The Court has already denied Defendant's motion for summary judgment as to Plaintiffs' implied warranty claim (Count IX), finding that Plaintiffs have presented sufficient evidence to show that a genuine issue of material fact exits as to whether Lumber Liquidators breached an implied warranty resulting in economic damage to Plaintiffs. Unlike claims arising under other sections of the DTPA, section 17.50(a)(2) claims do not require that Plaintiffs demonstrate that they relied on any sort of a promise or representation by Defendant. *See Deburro v. Apple, Inc.*, No. A-13-CA-784-SS, 2013 WL 5917665, at *5 n.6 (W.D. Tex. Oct. 31, 2013) (stating in dicta that "[t]here are additional DTPA causes of action which do not require reliance such as 'breach of an express or implied warranty.'"); *Garza v. Garza*, No. 04-11-00310-CV, 2013 WL 749727, at *7 (Tex. App. Feb. 27, 2013) ("To recover on a claim for breach of warranty under the DTPA, the plaintiff must establish that he was a consumer, that the warranty was made, that the warranty was breached, and that as a result of the breach, an injury resulted."). Courts have also specifically recognized that claims arising under the general Texas Business and Commerce Code provision on implied warranties, section 2.314, do not require any form of reliance. *See, e.g.*, *Khan v. Velsicol Chem. Corp.*, 711 S.W.2d 310, 319 (Tex. App. 1986) ("[R]eliance on a representation is not an element of a claim for breach of implied warranty."); *cf. McManus v. Fleetwood Enters., Inc.*, 320 F.3d 545, 550-51 (5th Cir. 2003) (certifying class action based on implied warranty claims, in part, because they do not require reliance under Texas law, unlike express warranty claims, for which the court denied class certification).

The Court therefore concludes that the Parnellas' failure to demonstrate any form of reliance does not defeat their claim under the DTPA. Accordingly, Defendant's Motion is DENIED as to Count VII.

**H.      Alleged Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. § 505/1, *et seq.* (Count VIII) (Asserted by Illinois Plaintiffs Burke)**

The ICFA sets out an extremely broad set of protections for consumers. It reads:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, [footnote omitted] in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2. Actual reliance is not essential to establish a claim. *See Tyla v. Gerber Prods. Co.*, 178 F.R.D. 493, 499 (N.D. Ill. 1998) ("[P]roof of actual reliance on the part of each plaintiff is not required under the [Illinois Consumer Fraud Act]."). Nevertheless, a plaintiff must have sustained an injury, and the Supreme Court of Illinois has determined that "to properly plead the element of proximate causation in a private cause of action for deceptive advertising brought under the Act, a plaintiff must allege that he was, in some manner, deceived." *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 164 (Ill. 2002). In that case, the Supreme Court of Illinois affirmed the dismissal of a case analogous to this one in which the plaintiffs there claimed that "defendant's allegedly deceptive advertising scheme increased demand for defendant's premium gasolines. Because of this increase in demand, defendant 'was able to command an inflated and otherwise unsustainable price for its premium gasolines.'" *Id.* at 155 (citation omitted). Plaintiffs concede that their price distortion theory cannot support damages under the ICFA. *See* Pls.' Mem. Opp'n 22 n.95. Plaintiffs' price distortion theory of damages is therefore insufficient to make out a

valid claim under the ICFA.  Because the Illinois Plaintiffs have not shown that they were directly deceived in any way, Defendant's Motion is GRANTED as to the ICFA claim (Count VIII).

## I.    Alleged Fraudulent Concealment (Count I) (Asserted by All Plaintiffs) and Alleged Negligent Misrepresentation (Count XI) (Asserted by Florida Plaintiffs Brandt[28])

### 1.    Fraudulent Concealment (Count I)

Plaintiffs contend that Lumber Liquidators "concealed and suppressed material facts concerning the content of formaldehyde" in its Products.  FAC ¶ 158.  The generally recognized elements of a fraudulent concealment cause of action are: (1) misrepresentation or omission of a material fact, (2) a duty to disclose, (3) intent to induce reliance and/or defraud, (4) some form of reliance, and (5) resulting damages.[29]  All of the relevant states have adopted these elements with the exception of Texas, which does not require reliance when the fraud claim is based on failure to disclose a material fact,[30] and California, which only requires that the plaintiff would have acted differently had that plaintiff been aware of the suppressed fact.[31]

As described in Section III(C) above, Plaintiffs have sufficiently demonstrated that LL's alleged misrepresentations were material.  Regarding the second element—duty to disclose—Defendant argues that Lumber Liquidators had no special duty to the non-California Plaintiffs to disclose whether its laminate flooring complied with CARB.  Def.'s Mem. 22.  While there are

---

[28] This claim was initially asserted on behalf of all Plaintiffs and all classes, but this Court dismissed the claims for negligent misrepresentation (Count XI) on behalf of all Plaintiffs other than the Brandts.

[29] *See Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC*, 76 Cal. Rptr. 3d 325, 332 (Cal. Ct. App. 2008); *R.J. Reynolds Tobacco Co. v. Martin*, 53 So. 3d 1060, 1068 (Fla. Dist. Ct. App. 2010); *Soules v. General Motors Corp.*, 402 N.E.2d 599, 601 (Ill. 1980); *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1108 (N.Y. 2011); *Bradford v. Vento*, 48 S.W.3d 749, 754-55 (Tex. 2001).

[30] *Bradford*, 48 S.W.3d at 754-55; *see also Hoffman v. AmericaHomeKey, Inc.*, 23 F.Supp.3d 734, 744 (N.D. Tex. 2014).

[31] *See Blickman Turkus*, 76 Cal. Rptr. 3d at 332 (Cal. Ct. App. 2008) ("[T]he plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact.").  Contrary to Defendant's contention that every state's fraudulent concealment cause of action "includes the same five minimum elements," *see* Def.'s Mem. 20, as relevant here, only the states of Florida, Illinois, and New York require actual reliance.

some differences among the states concerning when a party has a duty to disclose, the states relevant to the pending Motion all recognize a duty to disclose in at least one of the two following circumstances: (1) when one party voluntarily discloses information, the whole truth must be disclosed or (2) when one party possesses superior information to the other and knows or should have known that the other is acting on the basis of mistaken information.[32]  Viewing the evidence most favorably to the Plaintiffs, the record contains sufficient facts to support a duty to disclose under both recognized circumstances: (1) LL voluntarily represented in all states that its Products were CARB compliant without disclosing other information calling into question the accuracy or completeness of those voluntary disclosures; and (2) LL possessed superior information and knew that consumers were likely acting based on false, incomplete, or misleading information.

The Court concludes that the Plaintiffs have presented evidence that, when viewed most favorably to them, is sufficient to establish the requisite intent of Defendant, the third element. However, none of the Plaintiffs other than the Brands have presented sufficient evidence with respect to the fourth element, actual reliance.  Nevertheless, because reliance is not required in Texas, and California only requires that a plaintiff would have acted differently had that plaintiff been aware of the suppressed fact, this element does not preclude the fraudulent concealment claims of the Parnellas (TX), the Ronquillos (CA), or Mr. Balero (CA), who, as the Court has

---

[32] *See, e.g.*, *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (finding that, "New York recognizes a duty by a party to a business transaction to speak . . . where the party has made a partial or ambiguous statement . . . [or] where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge"); *Matthews v. Am. Honda Motor Co.*, No. 12-60630-CIV, 2012 WL 2520675, at *3 (S.D. Fla. June 6, 2012) (finding a Florida consumer protection law claim exists where "the defendant knowingly fails to disclose a material defect that diminishes a product's value"); *Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 987 (N.D. Cal. 2010) (recognizing duty to disclose under California consumer protection laws when the defendant had exclusive knowledge of material facts and actively concealed those facts or made a partial misrepresentation); *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 593 (Ill. 1996) ("[A] duty to disclose material facts may arise out of a situation where plaintiff places trust and confidence in defendant, thereby placing defendant in a position of influence and superiority over plaintiff."); *Playboy Enters., Inc. v. Editorial Caballero, S.A. de C.V.*, 202 S.W.3d 250, 260 (Tex. App. 1997) ("[A] duty to [disclose] may arise . . . when one makes a partial disclosure.").

already discussed, presented adequate evidence that they would have acted differently had they known about the Products' formaldehyde levels.

Regarding the fifth element of damages, Defendant claims Plaintiffs were not damaged by the alleged nondisclosure. Def.'s Mem. 23. Plaintiffs claim harm in the form of overpayment for the flooring. Pls.' Mem. Opp'n 21 ("[I]f Defendant had told the truth about its Chinese-made laminates, it could not have sustained the prices it charged."). Defendant argues that economic harm alone does not constitute harm sufficient for fraud.

The Court has already concluded that the five states relevant to the Motion—California, New York, Illinois, Texas, and Florida—do not apply the economic loss rule to bar claims for fraudulent concealment. Pretrial Order No. 8 at 19. Therefore, as long as the Plaintiffs allege a cognizable form of economic loss, their claims are not barred. Whether they have suffered legally cognizable forms of economic loss, however, depends on whether each of the respective states allows recovery for fraud-based loss based on the price distortion theory. In that regard, as discussed previously, the Court concludes that the Florida,[33] Texas[34], and California Plaintiffs other than the Washingtons,[35] have, for the purposes of avoiding summary judgment, sufficiently demonstrated a basis for claiming cognizable forms of fraud-based loss in those respective states.

By way of summary, because the Cloudens (NY), the Burkes (IL), and Washington (CA) have not presented sufficient evidence of reliance, as required under New York, Illinois, and

---

[33] As described above, the Brandts have demonstrated a material fact as to whether they relied on LL's alleged omissions and would not have purchased the product if they had been aware of the information which LL allegedly omitted. As such, they do not rely on the price distortion theory of damages, and their damages claim is therefore cognizable under Florida common law.

[34] The Court concludes that the Supreme Court of Texas would recognize a price distortion theory of damages. *See Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 682 (Tex. 2000) ("[I]f there is evidence of the bargain that would have been struck had the defrauded party known the truth, there can be a recovery for benefit-of-the-bargain damages.").

[35] The Court concludes that the Supreme Court of California would recognize a price distortion theory of damages. *Cf. Lazar v. Superior Court*, 909 F.2d 981, 990 (Cal. 1996) ("In pursuing a valid fraud action, a plaintiff advances the public interest in punishing intentional misrepresentations and in deterring such misrepresentations in the future. . . . Because of the extra measure of blameworthiness inhering in fraud, . . . fraud plaintiffs may recover 'out-of-pocket' damages in addition to benefit-of-the-bargain damages.").

California state law for fraudulent concealment claims, Defendant's Motion is GRANTED as to their claims on Count I, and the Motion is DENIED as to the other Plaintiffs' claims on Count I.

### 2. Negligent Misrepresentation (Count XI)

Only the Brandts' claim for fraudulent representation remains pending before the Court. In Florida, negligent misrepresentation requires (1) that the defendant made a statement concerning a material fact that it believed to be true but which was in fact false; (2) negligence in making the statement because the defendant should have known that the statement was false; (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting loss, injury, or damage. *In re Standard Jury Instructions in Civil Cases—Report No. 12-01*, 130 So. 3d 596, 610 (Fla. 2013) (per curiam).[36] For the reasons already discussed, the Brandts have presented sufficient evidence to establish each of these elements, including reliance on Defendant's alleged misrepresentations. Defendant's motion is therefore DENIED as to Plaintiffs Brandts' claim of negligent misrepresentation (Count XI).

### J. Whether All Plaintiffs Are Entitled to Declaratory Relief (Count XII)

Plaintiffs seek a judicial finding and declaration that Defendant's policies and practices of labeling, advertising, selling, and distributing the Products violate the CARB standards as set forth in the ATCM. FAC ¶¶ 266-67.

"[D]istrict courts have great latitude in determining whether to assert jurisdiction over declaratory judgment actions." *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998). A Court may grant declaratory relief where the result of the declaration will affect the public interest or serve a "useful" or "helpful" purpose with respect to rights and obligations relating to an issue. *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir.

---

[36] On December 11, 2015, this Court granted Lumber Liquidators' Motion to Dismiss with respect to the negligent misrepresentation claims of all Plaintiffs except the Brandts and the Florida class. Pretrial Order No. 8 at 26. Thus, the claim of the Brandts and the Florida class of Plaintiffs is the only one presently before the Court.

1937). As the Court has previously observed, a declaratory judgment "is only appropriate when it would 'serve a useful purpose in clarifying and settling the legal relations in issue' to guide the parties in the future" and that it is "'not an appropriate remedy'" to adjudicate only "'past misconduct.'" *Beazer Homes Corp. v. VMIF/Anden Southbridge Venture*, 235 F. Supp. 2d 485, 494 (E.D. Va. 2002) (citations omitted).

Given that Defendant's Products have been removed from sale, Def.'s Mem. 29 n.6, and that the parties' rights and obligations will be fully adjudicated in the context of their specific claims and defenses, it would be neither "helpful" nor "useful" to provide declaratory relief so that "each of the parties [to] know their respective rights and duties and act accordingly."[37] FAC ¶ 268. Accordingly, Defendant's Motion is GRANTED with respect to Count XII.

## VI. CONCLUSION

For the reasons stated above, Defendant's Motion is:

1. GRANTED as to all claims filed by Plaintiff Laura Washington;

2. GRANTED as to those claims filed by the New York Plaintiffs Clouden, the Illinois Plaintiffs Burke, and the California Plaintiffs Washington from the California class for fraudulent concealment (Count I);

3. GRANTED as to all claims for violations of the California False Advertising Law and the California Legal Remedies Protection Act (Counts III-IV);

4. GRANTED as to all claims for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Count VIII);

5. GRANTED as to all claims for declaratory relief (Count XII); and

---

[37] In its opposition brief, Plaintiff seems to concede that the point is moot. *See* Pls.' Mem. Opp'n 28 ("The declaratory relief may also be moot as Defendant has agreed not [sic] sell the Chinese laminate. . . . Nevertheless, Defendant has not shown they [sic] are entitled to summary judgment on Count XII.").

6.  DENIED as to all other claims.

Accordingly, Counts III, IV, VIII and XII are DISMISSED. The proceedings will continue as to Counts I, II, V, VI, VII, IX, X, and XI.

The Court will issue an appropriate order.

The Clerk is directed to forward a copy of this Memorandum Opinion to all counsel of record.

/s/
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
June 20, 2017

41